2001-NMCA-014

24 P.3d 306

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Tim WAGONER, Defendant–Appellant.**

No. 20,812.

Court of Appeals of New Mexico.

Feb. 14, 2001.

Certiorari Denied, No. 26,828,
April 3, 2001.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Ass't Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Ass't Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals the district court's denial of his motion to suppress evidence entered after this Court's remand for consideration of the applicability of the inevitable discovery doctrine. *See State v. Wagoner*, 1998–NMCA–124, 126 N.M. 9, 966 P.2d 176 (*Wagoner I*). This case presents us with an opportunity to clarify and distinguish the inevitable discovery and independent source doctrines, which are related, but analytically distinct, exceptions to the exclusionary rule. We also must decide whether Article II, Section 10 of the New Mexico Constitution will allow application of the independent source exception to save a search conducted pursuant to a warrant based partially on information obtained during a prior warrantless search of a home. Given the unique procedural history of this case, we consider this issue anew without regard to the first appeal. We hold that the inevitable discovery doctrine does not apply to the facts of this case and that, under Article II, Section 10, the independent source doctrine is inapplicable when a search warrant is based partially on information obtained in violation of a defendant's constitutional rights. We reverse and remand. To the extent that it is inconsistent with our holding, *Wagoner I* is overruled.

**FACTS AND PROCEDURAL HISTORY**

{2} This is the second appeal in this case. The details of the search underlying this appeal are described in detail in *Wagoner I*. Based on a tip by a citizen-informant, Deputy Sheriff Scott Wehrman and Deputy Floyd Foutz went to Defendant's home to investigate possible drug dealing. As the deputies approached the residence, Deputy Wehrman smelled burning marijuana emanating from an open window. After Defendant answered the door, Deputy Wehrman repeatedly asked Defendant for consent to search the residence. Defendant refused, telling the deputy that he would need a warrant to conduct the search. Deputy Wehrman then told Defendant that he was going to secure the residence and called his supervisor, Sergeant Christensen, for advice. Sergeant Christensen told the deputy to conduct a sweep of the house to insure that no one was inside who could destroy evidence. During the warrantless sweep, Deputy Wehrman saw a scale and marijuana in plain view on top of a dresser. Deputy Wehrman did not seize the evidence at that time, but left the residence to secure a search warrant. In his application for the warrant, Wehrman swore to the following facts:

On April 27th, 1997 this affiant was at a local resturant [sic] and given information from a local school [b]us driver that there were drugs and possibly drug distribution going on from a residence located at 211 Hartman in Aztec NM. This bus driver said that for at least the past year she had witnessed numerous vehicular traffic in and out of that residence and in her opinion she believe[d] they were selling drugs out of that residence.

This affiant, at approximately 19:22, arrived at the residence located at 211 Hartman to investigate into the information given to him regarding occurrences [sic] at that residence. Immediately upon approaching the residence this affiant could smell the odor of marijuana. This affiant immediately knew the odor to be that of marijuana due to his training and experience regarding drugs and narcotics. The smell was coming from a large open window near the front door. This affiant knocked on the front door and heard the occupant moving around in the home and it took ... an extended length of time for the occupants to answer the door. The door to the residence was opened by a subject later identified as Tim Wagoner.

This affiant confronted Mr. Wagoner about the odor of marijuana. Mr. Wagoner denied possession or knowledge about the marijuana. While talking to Mr. Wagoner I noted that the odor of marijuana was stronger and ... the smell was coming from inside the residence. While I was speaking to Mr. Tim Wagoner his son c[a]me out of the residence. The son was discovered to be thirteen years of age. Mr. Tim Wagoner did indicate that the residence was his. This affiant asked for consent to search. This consent was denied.

This affiant did a cursory search of the residence to make sure that no other subjects were present that could destroy evidence and also for officer safety. A triple beam scale was seen in the far west bedroom along with obvious marijuana buds and stems. The residence was then secured so that search warrant could be obtained.

The magistrate judge issued the warrant, and Deputy Wehrman and other officers conducted a second search of Defendant's home. During the search pursuant to the warrant, officers uncovered over eight ounces of marijuana.

{3} Defendant was charged with the distribution of marijuana in a drug-free school zone, a third degree felony. *See* NMSA 1978, § 30–31–22(C)(1)(a) (1990). Defendant moved to suppress the evidence gathered pursuant to the warrant, arguing that no exigent circumstances justified the first warrantless sweep, and therefore the evidence obtained during the second search was "fruit of the poisonous tree" under the exclusionary rule. At the suppression hearing, the State argued that even if no exigent circumstances justified the sweep, the evidence was nonetheless admissible under the inevitable discovery doctrine. The district court refused to consider application of the doctrine and granted Defendant's motion to suppress. The State appealed and this Court affirmed the district court's ruling that no exigent circumstances justified the warrantless sweep. *See Wagoner I*, 1998–NMCA–124, ¶ 22. However, despite the fact that the issues to be considered on remand were not

fully briefed by the parties, this Court remanded the case to the district court for consideration of whether the evidence was nonetheless admissible under the inevitable discovery doctrine. *See id.* ¶ 25.

{4} After remand, Defendant filed a second motion to suppress in which he argued that the inevitable discovery doctrine as defined by this Court was incompatible with Article II, Section 10 of the New Mexico Constitution. The district court refused to consider Defendant's arguments, however, ruling that the constitutional issue was beyond the scope of the remand.

{5} At the hearing on the second motion to suppress, Deputy Wehrman testified that he intended to secure a warrant prior to the sweep of Defendant's home. Sergeant Christensen testified that, at the time he told Deputy Wehrman to secure the residence, he intended to obtain a warrant. The magistrate judge who issued the warrant testified that she would have issued the warrant even if Deputy Wehrman had not informed her of the evidence discovered during the illegal sweep.

{6} The district court denied Defendant's motion to suppress, finding that the officers intended to secure the warrant prior to the illegal entry and that the magistrate would have issued the warrant regardless of the illegally obtained information. Defendant entered a conditional plea of guilty to possession of marijuana over eight ounces, reserving his right to appeal two issues: (1) whether the inevitable discovery doctrine is an exception to Article II, Section 10 and (2) whether, without the illegally obtained information, the affidavit provided sufficient information to establish probable cause. Because of our disposition of the case, we limit our discussion to the first issue.

## DISCUSSION

### I. Preservation

{7} Both sides argue that the other side failed to preserve issues on appeal. The State argues that Defendant failed to preserve his state constitutional issue because he did not raise it during the first appeal. Defendant argues that the State failed to preserve its argument that the evidence was

admissible under the independent source exception, rather than inevitable discovery doctrine because it did not specifically name the independent source doctrine as the applicable exception until oral arguments in the current appeal. We are unpersuaded by both arguments and hold that the issues are properly before us. This case presents a unique factual and procedural history that militates against strict application of the rules of preservation and stare decisis.

{8} The distinction between the inevitable discovery and independent source doctrines has caused considerable confusion among courts and legal scholars. *See United States v. Herrold*, 962 F.2d 1131, 1138–39 (3d Cir. 1992); 3 Wayne R. La Fave, *Criminal Procedure* § 9.3(d), (e) (2d ed.1999). This confusion is understandable given that the inevitable discovery rule is an extrapolation from the independent source doctrine, and has been referred to as the "hypothetical independent source" rule. *See Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."). The confusion between the two doctrines and their potential applicability to the facts surrounding the search of Defendant's home was further compounded by the lack of a meaningful opportunity for the parties to develop their arguments prior to this appeal.

{9} At the first hearing on Defendant's motion to suppress, the district court refused to consider the inevitable discovery doctrine as an alternate source of admissibility. As such, neither the State nor Defendant was given an opportunity to develop and litigate this issue. On the first appeal, the primary issue before this Court was the existence of exigent circumstances that would justify Wehrman's warrantless sweep of Defendant's home. *See Wagoner I*, 1998–NMCA–124, ¶ 22. The issue of inevitable discovery, although raised, was not fully briefed by either party. Prior to the second suppression hearing, Defendant filed a motion in which he raised his state constitutional argument. However, the district court refused to consider this issue believing it to be beyond the scope of remand. As such, the parties were tied to the test developed by this Court in the absence of adequate briefing and again lacked the opportunity to develop or litigate the issue. The current appeal is the first opportunity for the parties to fully develop and present arguments for and against application of the inevitable discovery or independent source doctrines to the facts of this case. For this reason, we hold that the issues were preserved and will consider them anew, without regard to the first appeal.

{10} The State has not challenged the holding in *Wagoner I* that the warrantless sweep was a violation of Defendant's rights because of the lack of exigent circumstances. *See id.* Our opinion in this appeal does not address this issue and does not affect that portion of the prior decision.

## II. Standard of Review

{11} Typically, in reviewing a trial court's denial of a motion to suppress, we determine whether the law was correctly applied to the facts, giving due deference to the factual findings of the lower court. *State v. Duquette*, 2000–NMCA–006, ¶ 7, 128 N.M. 530, 994 P.2d 776. However, because resolution of this appeal requires review of the legal standard governing the admissibility of the evidence and implicates a constitutional right, we review the trial court's decision de novo. *See State v. Attaway*, 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994).

## III. Exceptions to the Exclusionary Rule

{12} As mentioned above, the inevitable discovery and independent source doctrines are related exceptions to the exclusionary rule. However, the analysis required under each is significantly different. For the reasons discussed below, we hold that the inevitable discovery doctrine is inapplicable to the facts of this case, and we consider only whether the search pursuant to the warrant was in fact independent of the illegal sweep.

## A. Inevitable Discovery

■ {13} In *State v. Corneau*, 109 N.M. 81, 90, 781 P.2d 1159, 1168 (Ct.App.1989), this Court described the distinction between the two exceptions as follows: " '[i]nevitable discovery' relates to evidence that was seized unlawfully but would have been seized independently and lawfully in due course, while the term 'independent source' applies to evidence that has been obtained independent of 'tainted' or possibly 'tainted' information." For inevitable discovery to apply, the lawful means by which the evidence could have been attained must be wholly independent of the illegal actions. In *Nix v. Williams*, 467 U.S. 431, 436, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), for example, the police had organized a search for the body of a little girl, which they called off after the defendant confessed to the killing and led investigators to the body. Although the Supreme Court held that the confession was obtained in violation of the defendant's Sixth Amendment rights, the Court declined to suppress the evidence because the search party would have inevitably discovered the child's body had the search not been cancelled. *See id.* at 449, 104 S.Ct. 2501.

{14} The inevitable discovery doctrine was most recently applied in New Mexico in *State v. Johnson*, 1996–NMCA–117, 122 N.M. 713, 930 P.2d 1165. In *Johnson*, this Court declined to suppress evidence discovered when police officers forcibly removed the defendant's clothing after the defendant refused to undress and put on jail clothing prior to entering a cell. *See id.* ¶ 19. The Court held that, since the rocks of cocaine at issue in the case would have been inevitably discovered during a standard inventory search of the defendant's possessions, it was unnecessary to address the defendant's argument that the police acted unlawfully in ordering the defendant to change clothes. *See id.* The Court applied the inevitable discovery exception based on testimony that it was standard police procedure to conduct an inventory search of all individuals confined within the jail. *See id.* ¶ 18.

■ {15} The inevitable discovery doctrine applies where evidence may have been seized illegally, but where an alternative legal means of discovery, such as a routine police inventory search, would inevitably have led to the same result. For the doctrine to apply, the alternate source of evidence must be pending, but not yet realized. If the alternate source has been realized, and the evidence seized or "reseized" according to this alternate source, the inevitable discovery doctrine is no longer applicable. Instead, the admissibility of the evidence must be evaluated under the independent source doctrine.

{16} In this case, it is unnecessary for us to hypothesize whether the evidence first discovered during Deputy Wehrman's illegal sweep would have been inevitably discovered because the alternate source of the evidence, namely the search pursuant to a warrant, had been realized. Furthermore, there was no evidence that established police procedure or an independent investigation would have led to the discovery or seizure. For this reason, we conclude that the inevitable discovery doctrine is inapplicable.

{17} We believe that the inevitable discovery doctrine has a place in New Mexico law. However, because we decide that the doctrine is inapplicable to the facts surrounding the search of Defendant's home, we do not reach the question of what safeguards Article II, Section 10 of the New Mexico Constitution would require before the doctrine could be applied.

## B. Independent Source

■ {18} In keeping with the interstitial approach to constitutional analysis, we will begin our discussion by reviewing the exclusionary rule and its independent source exception under federal law. *See State v. Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (discussing the interstitial approach). If the federal rule provides the relief sought by Defendant, it becomes unnecessary for us to reach Defendant's state constitutional claim. However, if Defendant's rights are not fully protected under the federal constitution, we must then analyze whether the State constitution provides broader protection. *See id.* This Court may diverge from federal precedent for three rea-

sons: (1) the federal analysis of the issue is flawed, (2) distinctive state characteristics require a different result, or (3) the federal analogs are undeveloped. *See id.* ¶ 20.

### i. Federal Law

■ {19} Under the Fourth Amendment, the exclusionary rule is a judicially created remedy that serves to protect constitutional rights generally through its deterrence effect on future unlawful police conduct. *See United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In deciding whether to apply the exclusionary rule to a particular situation, the Supreme Court balances the possible injury to the fact-finding process if the evidence is excluded with the potential deterrence value of the exclusion. *See id.* at 349, 94 S.Ct. 613. The Court has expressly rejected the idea that the exclusionary rule is a constitutional right belonging to the individual. *See id.* at 348, 94 S.Ct. 613.

■ {20} Because the federal exclusionary rule is based on a deterrence rationale, where exclusion will not deter misconduct, the rule will not be applied. "The suppression or exclusionary rule is a judicially prescribed remedial measure and as 'with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.'" *Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quoting *Calandra,* 414 U.S. at 348, 94 S.Ct. 613).

■ {21} The independent source doctrine is an exception to the exclusionary rule where evidence is legally seized after an illegal search. The exception was first recognized by the United States Supreme Court in *Silverthorne Lumber Co. v. United States,* as a corollary to the Court's holding that the exclusionary rule applied not only to evidence illegally obtained, but also to other evidence derived from the primary evidence:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others.

251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920), *overruled on other grounds by United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980).

{22} In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court extended the exclusionary rule to prohibit the use of evidence that was the indirect product or "fruit" of illegal police conduct. However, the Court recognized that not all evidence discovered as the result of police misconduct need be suppressed. *See id.* at 487–88, 83 S.Ct. 407. The Court held that not

> all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question ... is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* (quoting Maguire, Evidence of Guilt 221 (1959)). The "but for" test rejected in *Wong Sun* has become the threshold inquiry in determining whether evidence is admissible under the independent source doctrine. *See Segura,* 468 U.S. at 815, 104 S.Ct. 3380 ("our cases make clear that evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence").

{23} Since *Silverthorne Lumber Co.,* the Supreme Court has twice applied the independent source doctrine to evaluate the admissibility of evidence first discovered during an illegal search and later "rediscovered" during a search pursuant to a warrant. In *Segura,* after arresting the defendants for drug trafficking, officers conducted a warrantless sweep of the defendants' apartment and observed various drug paraphernalia in plain view. *See id.* at 800–01, 104 S.Ct. 3380. The purpose of the sweep was to secure the apartment while the officers awaited a war-

rant to conduct a full search. No information obtained during the sweep was used to procure the warrant. *See id.* at 814, 104 S.Ct. 3380. The Supreme Court held that the evidence obtained during the second search pursuant to a valid warrant was admissible under the independent source exception. *See id.* at 816, 104 S.Ct. 3380.

{24} In reaching its holding, the Court emphasized the independence of the second search from the illegal sweep:

None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged.... Had police never entered the apartment, but instead conducted a perimeter stakeout to prevent anyone from entering the apartment and destroying evidence, the contraband now challenged would have been discovered and seized precisely as it was here.

*Id.* at 814, 104 S.Ct. 3380.

{25} After *Segura*, the Court decided *Murray*. In *Murray*, federal agents made an illegal warrantless entry into a warehouse during surveillance of suspected illicit drug activities. During the illegal entry, the agents observed several burlap-wrapped bales that were later found to contain marijuana. *See* 487 U.S. at 535, 108 S.Ct. 2529. The agents left the warehouse without disturbing the bales and did not return until they had secured a search warrant. *See id.* The affidavit in support of the warrant did not include any reference to the prior entry or to the evidence observed while in the warehouse. *See id.* at 535–36, 108 S.Ct. 2529. The Court remanded the case to determine whether the search pursuant to the warrant was a genuinely independent source of the

evidence seized. *See id.* at 543–44, 108 S.Ct. 2529. Because the affidavit in support of the warrant had not included any information gathered during the illegal sweep of the warehouse, the sole question on remand was whether the agents would have sought the warrant if they had not previously entered the warehouse. *See id.*

{26} The Court held that, in determining whether evidence is admissible under the independent source exception, the ultimate question is "whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." *Id.* at 542, 108 S.Ct. 2529. The Court noted that the warrant would not qualify as an independent source "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.*

{27} *Segura* and *Murray* addressed the application of the independent source doctrine when an affidavit for a search warrant did not include information gathered during a prior illegal entry. *See Segura*, 468 U.S. at 814, 104 S.Ct. 3380; *Murray*, 487 U.S. at 535–36, 108 S.Ct. 2529. The Supreme Court has not yet addressed a case, such as the case at bar, where police used information obtained in the illegal search to support an affidavit for a search warrant. However, several federal and state courts have expanded *Segura* and *Murray* to admit evidence obtained using a tainted warrant, an expansion that this Court appears to have embraced in the prior decision. *See Wagoner I*, 1998–NMCA–124, ¶ 24; *see also People v. Weiss*, 20 Cal.4th 1073, 86 Cal.Rptr.2d 337, 978 P.2d 1257, 1261 (1999) (listing courts applying independent source doctrine to warrant based partially on tainted information); *Herrold*, 962 F.2d at 1141–43; *United States v. Restrepo*, 966 F.2d 964, 970 (5th Cir.1992). These cases have typically combined the reasoning of *Murray* with Supreme Court cases allowing the admission of evidence seized pursuant to partially tainted warrants. *See Franks v. Delaware*, 438 U.S. 154, 167–68, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United*

*States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).

{28} The expansion of the independent source doctrine to include evidence seized pursuant to a tainted warrant has been explained by many courts as based on an unwillingness to put the police in a worse position than they would have been in had they not acted illegally. *See Herrold,* 962 F.2d at 1141. This reasoning was adopted by the Supreme Court in both *Nix* and *Murray.* "The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position tha[n] they would have been in if no police error or misconduct had occurred." *Nix,* 467 U.S. at 443, 104 S.Ct. 2501; *see also Murray,* 487 U.S. at 541, 108 S.Ct. 2529. Thus, under federal law, it is unclear whether Defendant would prevail although in the Third and Fifth Circuits, it would appear that he would not. Accordingly, under *Gomez,* we must turn to our state constitution. *See* 1997–NMSC–006, ¶ 19.

### ii. State Constitution

{29} The exclusionary rule under Article II, Section 10 of the State Constitution is a constitutional right belonging to the individual. *See State v. Gutierrez,* 116 N.M. 431, 446, 863 P.2d 1052, 1067 (1993). If the State conducts a search without a warrant and without sufficient grounds for an exception to the warrant requirement, we will suppress the evidence to "effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." *Id.* This recognition of the constitutional nature of the exclusionary rule is based in large part on our Supreme Court's strong preference for the protections afforded by the warrant process. *See id.* at 444, 863 P.2d at 1065; *Campos v. State,* 117 N.M. 155, 159, 870 P.2d 117, 121 (1994); *Gomez,* 1997–NMSC–006, ¶ 36.

{30} The purpose of the state exclusionary rule is accomplished by doing no more than return the parties to where they stood before the right was violated. . . .

Denying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's officers had stayed within the law.

*Gutierrez,* 116 N.M. at 446, 863 P.2d at 1067.

{31} As described in *Silverthorne Lumber Co.* and applied in *Segura* and *Murray,* the independent source doctrine may be compatible with Article II, Section 10 in cases where application of the exception does return the parties to where they stood before the defendant's rights were violated. For example, in *Corneau,* this Court upheld admission of evidence because the victim had specifically informed the police of the existence and location of the evidence prior to the warrantless search. *See id.,* 109 N.M. at 90, 781 P.2d at 1168. The Court concluded that the information provided by the victim furnished sufficient probable cause for a search warrant that was later obtained by a police officer who was not present during the unlawful search. *See id.* Because the information in the warrant and the officer preparing the application were wholly independent of the illegal search, returning the parties to their former positions did not require suppressing the evidence. In their former positions, the police had the means to lawfully seize the evidence.

{32} As noted in *Silverthorne Lumber Co.,* the mere fact that police erred in discovering or seizing evidence does not necessarily make the evidence inviolate or untouchable. *See* 251 U.S. at 392, 40 S.Ct. 182. When police have a source of the evidence that is wholly independent of the prior illegal conduct, suppression of the evidence would put the defendant in a better position than prior to the illegal police conduct. However, when there is no objective evidence of either a standard procedure or an independent investigation, we believe that the New Mexico Constitution requires us to carefully scrutinize the facts to determine wheth-

er a warrant is truly independent of prior illegal conduct by police.

{33} We believe that applying the independent source exception to admit evidence seized pursuant to a tainted warrant could put the police in a better, not a worse, position. According to the objectively verifiable evidence, Deputy Wehrman had only begun his investigation of Defendant; he did nothing to secure the warrant prior to the illegal entry; he used the illegally obtained evidence in securing the warrant; and he was responsible for both the warrantless entry and the search pursuant to warrant. The subjective, nonverifiable evidence elicited on remand was that Deputy Wehrman would have secured the warrant in the absence of the illegal entry and that the magistrate would have issued the warrant without the illegal information. In other words, our prior opinion .invited certain testimony which became a self-fulfilling prophecy on remand. In this case and cases like it, application of the independent source exception would allow a non-compliant officer to take a shortcut and circumvent the warrant requirement merely to confirm suspicions and then bolster the affidavit for a later warrant, knowing that the search pursuant to the later warrant will stand so long as a magistrate agrees that the warrant would have issued without the illegally obtained information. This is bad policy and runs contrary to the stated purpose of the exclusionary rule under the State Constitution.

{34} We believe that Article II, Section 10 of the New Mexico Constitution prohibits us from retroactively and hypothetically correcting the errors of the police at the expense of a defendant's right to be free from an unreasonable search and seizure. Where "the state has transgressed the constitutional rights of a person accused of a crime, we will not sanction that conduct by turning the other cheek." *Gutierrez,* 116 N.M. at 446, 863 P.2d at 1067. We conclude that in this case and others like it suppression is necessary to effectuate Defendant's constitutional rights.

{35} In reaching our conclusion, we recognize that New Mexico courts have followed the reasoning of *Franks* and *Karo* to uphold

warrants containing both tainted and untainted information in the past. *See State v. Crenshaw,* 105 N.M. 329, 334, 732 P.2d 431, 436 (Ct.App.1986); *State v. Copeland,* 105 N.M. 27, 32–33, 727 P.2d 1342, 1347–48 (Ct. App.1986). In addition, this Court applied the *Franks* rule to the independent source inquiry in a pre-*Murray* case. *See State v. Barry,* 94 N.M. 788, 790, 617 P.2d 873, 875 (Ct.App.1980) (holding evidence admissible under independent source doctrine where police secured warrant based on tainted and untainted information). However, none of these cases were decided under Article II, Section 10, and all were decided prior to the adoption of the interstitial approach to state constitutional analysis.

{36} We are persuaded by the reasoning of other state courts which have held that inclusion of illegal information in an application for a search warrant automatically precludes application of the independent source doctrine. *See State v. Lewis,* 809 P.2d 925, 930 (Alaska Ct.App.1991) (holding independent source doctrine inapplicable because police used information from illegal entry to obtain warrant); *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 231 (1996); *State v. Clark,* 844 S.W.2d 597, 600 (Tenn. 1992). In *Melendez,* the Pennsylvania Supreme Court held that "[a]pplication of the 'independent source doctrine' is proper only in the very limited circumstances where the 'independent source' is *truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered."* 676 A.2d at 231 (internal citations omitted). In reaching its conclusion, the Court noted that the Pennsylvania Constitution placed greater importance on privacy interests than federal law. *Id.*

{37} The reasoning of *Melendez* is particularly persuasive, especially when viewed in light of the facts of the case at bar. The independent source doctrine could be the exception that swallowed the rule if it were to be used to admit evidence that was only hypothetically available through an independent source. Deputy Wehrman violated Defendant's constitutional rights when he conducted a warrantless search in the absence of

exigent circumstances. The deputy then exploited that violation by using the information gained to secure a warrant to seize the evidence. In this case, application of the independent source rule would be inconsistent with the *Gutierrez* requirement that the defendant be returned to the same position as occupied prior to the illegal conduct.

{38} Our holding is also consistent with our strong preference for objective standards for measuring police conduct with respect to constitutional rights:

> In New Mexico, the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable. This rule of law is best served by the application of certain objective criteria in deciding the reasonableness of any search and seizure. The application of objective criteria ... will secure the right of each citizen to be free from unreasonable searches and seizures and, at the same time, will provide law enforcement with clear standards of conduct.

*Attaway,* 117 N.M. at 149, 870 P.2d at 111 (internal citations omitted).

{39} In addition, we are troubled by the evidentiary inquiry into the mind of the magistrate apparently required by this Court's prior opinion. *See Wagoner I,* 1998–NMCA–124, ¶ 24, 126 N.M. 9, 966 P.2d 176 ("The State must establish that ... the magistrate would in fact have issued the warrant even if the affidavit had not contained recitals concerning what Wehrman found during the sweep."). This type of subjective inquiry not only runs counter to our understanding of the objective requirements of Article II, Section 10 of the New Mexico Constitution, but also places a magistrate judge in an awkward position of speculating about what might have been done under hypothetical circumstances.

{40} We hold that a search conducted pursuant to a warrant based partially on tainted information gathered during a prior illegal search is not an independent source of the evidence seized and therefore must be suppressed. We believe this holding accomplishes two important goals: (1) it provides a bright line rule for law enforcement officers and for courts reviewing police conduct, and (2) it properly effectuates an individual's right to be free from an unreasonable search and seizure and the corresponding right not to have evidence gained by exploitation of a constitutional violation used against the individual in court. To the extent that *Wagoner I* is inconsistent with our holding, it is hereby overruled.

**CONCLUSION**

{41} We reverse and remand.

{42} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, MICHAEL D. BUSTAMANTE, Judge.