Certiorari Granted, March 28, 2014, No. 34,526

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:  2014-NMCA-041

Filing Date:  January 2, 2014

Docket No. 31,982

STATE OF NEW MEXICO,

  Plaintiff-Appellant,

v.

ERNEST PAANANEN,

  Defendant-Appellee,

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Jacqueline Flores, District Judge

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** The State of New Mexico, pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972), appeals from a district court order suppressing physical evidence discovered by officers during a search of Defendant's belongings following his detention for alleged shoplifting. The State raises two issues on appeal:  (1) that the district court erred in failing to recognize a search incident to arrest where the officers had probable cause to arrest independent from

1

the fruits of the search, and (2) that the district court erred in requiring proof beyond all doubt for a claim of inevitable discovery.

**{2}** We hold that the arrest of Defendant was not lawful under Article II, Section 10 of the New Mexico Constitution. Therefore, the warrantless search of Defendant's belongings did not fall within any well-delineated exception to the warrant requirement, as it was not incident to a lawful arrest. The evidence would not have been inevitably discovered, as any inventory search that may have followed was dependent upon a legal arrest. Thus, the district court was correct in suppressing the items found in Defendant's backpack and cigarette pack. Accordingly, we affirm.

**BACKGROUND**

**{3}** Sportsman's Warehouse loss prevention personnel observed Defendant placing two flashlights under his jacket and leaving the store without paying. Loss prevention personnel detained Defendant upon his exit and escorted him to the loss prevention office. A pat-down search of Defendant took place, which revealed the two flashlights, as well as several other personal items located in Defendant's pockets. These items were placed on a table in the office. Store personnel gathered Defendant's backpack, which he had initially checked at the front door, and placed it on the floor in the office. Defendant was asked if he had any other merchandise in his backpack and he responded that he did not. He was told to sit in a chair and that the police would be called out.

**{4}** Albuquerque Police Officers Knight and Hsu were dispatched to Sportsman's Warehouse in reference to the alleged shoplifting. When they arrived, they learned from the store's loss prevention personnel that Defendant had been observed placing two flashlights under his arm and attempting to leave the store without paying. Officer Knight then entered the loss prevention office and immediately told Defendant to turn around and place his hands behind his back. Officer Knight handcuffed Defendant and conducted a pat-down. Officer Knight asked Defendant if he had any weapons on him and Defendant responded that store personnel had already placed the items from his pockets on the table. Officer Knight then told Defendant to sit back down in the chair and proceeded to ask Defendant for his name, date of birth, social security number, address, and phone number.

**{5}** At approximately the same time, Officer Hsu reached into the office, grabbed Defendant's backpack, and took it into the hallway. Officer Hsu opened the bag, discovering hypodermic needles and some items that appeared to have come from Office Depot. The officers began to question Defendant regarding his drug use and whether he was presently in possession of drugs, and examined Defendant's arms with a flashlight. Defendant denied being a drug user, except for one time the previous day, and denied having any drugs in his possession. Officer Knight expressed his disbelief as to Defendant's responses.

**{6}** Officer Knight asked loss prevention personnel if they could provide a copy of the surveillance video and they responded that it might take some time. Defendant then asked

2

Officer Knight not to throw his backpack and bike away. Officer Knight responded, "we're not going to throw it away, we're going to tag it."

{7} Approximately fifteen minutes after Defendant had been handcuffed, Officer Knight brought Defendant's backpack back into the office and began to place Defendant's items from the table into the bag, saying "I'm just going to throw all this junk in here." When he picked up Defendant's cigarette pack, he looked inside the pack and discovered what appeared to be heroin. Upset with Defendant for lying, Officer Knight told him that if he had been honest, they might have been able to work with him to work his charge off. Instead, Officer Knight told Defendant that they were "going to book [him] on the felony."

{8} The State indicted Defendant on charges of possession of a controlled substance (felony narcotic - heroin), possession of drug paraphernalia, and two counts of shoplifting ($250 or less) (one count involving the flashlights from Sportsman's Warehouse and the other count involving items taken from Office Depot). Prior to trial, Defendant filed two motions to suppress evidence. The first motion sought to suppress evidence gathered as a result of an illegal search and seizure pursuant to the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. The second motion sought to suppress statements made by Defendant to the officers, under the Fifth, Sixth, and Fourteenth Amendments and Article II, Sections 15 and 18 of the New Mexico Constitution. Prior to the suppression hearing, the State filed a written response to Defendant's motions, conceding the suppression of Defendant's statements but arguing that the physical evidence would have been inevitably discovered in an "inventory search incident to arrest."

{9} At the suppression hearing, the State clarified that it had a two-part argument: (1) that the searches were incident to arrest, and (2) that in the alternative, the evidence would have been inevitably discovered. Officers Knight and Hsu testified at the hearing, and a DVD recording of the entire interaction within the loss prevention office, as well as surveillance footage of the alleged shoplifting, were entered into evidence. Despite the State's initial assertion of search incident to arrest, both sides focused throughout the hearing on the inevitable discovery doctrine and particularly on *State v. Barragan*, 2001-NMCA-086, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110, relied upon by the State in its written response for the purpose of establishing inevitable discovery. Indeed, the district court's sole conclusion of law was that the second factor of the *Barragan* test[1] (whether the officers would in fact have made the arrest under such circumstances) was not met. The district court did not make a ruling

---

[1]"In order for a [district] court to find in favor of the State [that the evidence would have inevitably been seized during an inventory search], the court would be required to make at least three factual findings: (1) whether, without the illegally seized evidence, the officers had probable cause to arrest [the d]efendant; (2) whether the officers would in fact have made the arrest under such circumstances; and (3) whether an inventory that would have revealed the items was standard procedure." *Barragan*, 2001-NMCA-086, ¶ 18.

regarding whether the searches were incident to arrest.

## ANALYSIS

**{10}** The two issues for determination on appeal are: (1) whether the district court erred in failing to recognize a search incident to arrest where the officers had probable cause to arrest independent from the fruits of the search, and (2) whether the district court erred in requiring proof beyond all doubt for a claim of inevitable discovery. We address each in turn.

## 1. SEARCH INCIDENT TO LAWFUL ARREST

## A. PRESERVATION

**{11}** While acknowledging that the State did assert search incident to arrest at the suppression hearing, Defendant argues that the State did not properly invoke a ruling from the district court on that specific issue and thus did not preserve the issue for appeal. We do not agree.

**{12}** We have considered an issue to be preserved where the court was "armed with the legal assertions and facts necessary" to rule on the issue and the opposing party had the opportunity to respond. *State v. Granville*, 2006-NMCA-098, ¶ 16, 140 N.M. 345, 142 P.3d 933; *see also State v. Figueroa*, 2010-NMCA-048, ¶ 11, 148 N.M. 811, 242 P.3d 378 (concluding that the defendant preserved the issue of unreasonable expansion of an investigation "even if he did not primarily focus on the expansion during the suppression hearing"). While the State's written response to Defendant's motion to suppress physical evidence focused on the inevitable discovery doctrine, and particularly on *Barragan*, the response did contain a vague argument that the evidence "would have been discovered through an inventory search incident to arrest." The prosecutor clarified the State's position at the beginning of the suppression hearing, telling the district court: "just to clarify, Your Honor, that—and it might not have been clear in my motion—the State's position was that . . . Defendant was placed under arrest. It was a search incident to arrest, and alternatively it's inevitable discovery[.]" The district court then asked, "So you had a two-part argument?" and the prosecutor replied, "Yes." Yet aside from this clarification, throughout the suppression hearing both sides, in argument and in the questioning of the two witnesses, focused on whether the factors laid out in *Barragan* were met for purposes of determining inevitable discovery.

**{13}** The district court did not make a ruling regarding whether the searches were incident to arrest, even though facts bearing squarely on the issue were adduced during the hearing. Defendant contends that because the State did not make an additional argument regarding its purported search incident theory following the conclusion of the taking of evidence, it did not properly invoke a ruling from the district court.

4

**{14}** We acknowledge that the State had the burden of proof on this issue. *See State v. Weidner*, 2007-NMCA-063, ¶ 18, 141 N.M. 582, 158 P.3d 1025 (holding that "[t]he [s]tate has the burden of proving that the warrantless search was lawful under the search incident to arrest exception"). However, we recognize that "whenever possible, the [s]tate and defendants should be given identical procedural treatment on appeal, including evenhanded application of the rules governing the scope of appellate review." *State v. Alingog*, 1993-NMCA-124, ¶ 24, 116 N.M. 650, 866 P.2d 378, *rev'd on other grounds*, 1994-NMSC-063, 117 N.M. 756, 877 P.2d 562. Additionally, the preservation rule recognizes that "[i]t is impractical to require trial counsel to develop the arguments, articulate rationale, and cite authorities that may appear in an appellate brief." *State v. Gomez*, 1997-NMSC-006, ¶ 31, 122 N.M. 777, 932 P.2d 1.

**{15}** Applying these standards to the case at bar, although the State did not argue or articulate a rationale supporting the contention that the searches were justified as incident to arrest, it did assert the issue and adduce facts to support the legal principle. Defendant had the opportunity to respond during the suppression hearing. We conclude that the issue was preserved and consider it accordingly.

## B.    STANDARD OF REVIEW

**{16}** In reviewing a district court's ruling on a motion to suppress, this Court draws all reasonable inferences in favor of the ruling and defers to the district court's findings of fact as long as they are supported by substantial evidence. *State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856. If the district court does not state on the record a disbelief of uncontradicted testimony, we "presume the court believed all uncontradicted evidence." *Id.* ¶ 11. The ultimate determination of whether a search is reasonable and meets constitutional standards is a question of law that is reviewed de novo. *State v. Olson*, 2012-NMSC-035, ¶ 9, 285 P.3d 1066.

## C.    EXCEPTION TO WARRANT REQUIREMENT

**{17}** The officers did not have a warrant to search Defendant's backpack and cigarette pack. Under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution, warrantless searches are presumed to be unconstitutional. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (holding that "[a]ny warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions" (emphasis, internal quotation marks, and citation omitted)). According to *Rowell*, "[o]ne of the most firmly established exceptions to the warrant requirement is the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." *Id.* ¶ 13 (internal quotation marks and citation omitted).

## D. LAWFUL ARREST

**{18}** The threshold question we must address, then, is whether there was a lawful arrest in this case, and if so, when did it occur. The State contends that Defendant was placed under arrest before the officers searched his backpack and pack of cigarettes. Defendant argues that there was not an arrest made until well after the searches and discovery of the evidence of the unrelated felony drug offense, on the theory that the misdemeanor arrest rule precluded the officers from arresting Defendant for the shoplifting alone without a warrant.

**{19}** "The question exactly when has an arrest taken place is in the first instance for the [district] court to determine." *Boone v. State*, 1986-NMSC-100, ¶ 14, 105 N.M. 223, 731 P.2d 366. We determine whether there is substantial evidence to support the finding. *Id.* Here, the district court's findings as to whether the officers *would have* arrested Defendant were based solely on the subjective intent of Officer Knight, particularly the fact that he never definitively testified that he would have arrested Defendant. Specifically, the district court stated that "he was asked several times whether or not he always arrests or would have arrested, and he never really gave a direct, 'Yes, I would have arrested.' " Commenting further on Officer Knight's testimony, the district court stated:

> I wrote down his responses. One was, "They usually go to jail," which means "sometimes" [] to me. Another part of his testimony was that, "I can't remember letting somebody go," which is still not a definitive, and his last comment on it . . . was, "I most likely would have made the arrest."

However, "Fourth Amendment reasonableness is predominantly an objective inquiry." *Ashcroft v. al-Kidd*, __ U.S. __, ___, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks and citation omitted); *see also Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) (holding that "[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken" (internal quotation marks and citation omitted)).

**{20}** In this case, the officers were dispatched to Sportsman's Warehouse for a shoplifting call. Upon arrival, the officers met with the store's loss prevention personnel and learned of the facts leading up to Defendant's detention. Officer Knight then entered the small office where Defendant had been detained by store personnel and immediately handcuffed Defendant. Officer Knight patted Defendant down and asked him if he had any weapons on him. Officer Knight next told Defendant to sit down on a chair, which Defendant did.

**{21}** While Officer Knight did not specifically announce to Defendant that he was under arrest, he did not indicate that he was not under arrest or that he was free to leave. By the use of handcuffs, Officer Knight increased the amount of restraint that Defendant was under. "A person is arrested when . . . freedom of action is restricted by a police officer and . . . is subject to the control of the officer." *Boone*, 1986-NMSC-100, ¶ 14. This is consistent with

6

Professor LaFave's contention that a "[r]esort to physical restraint is almost certain to result in a holding that an arrest had been made." 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.1(a) (5th ed. 2012). Our Supreme Court, in determining the level of formality required for making an arrest, stated that "as a general rule, the notice is sufficient when it is such as to inform a reasonable man of the authority and purpose of the one making the arrest, and the reason thereof. Circumstances, without express words, may afford sufficient notice." *Manning v. Atchison T. & S. F. Ry. Co.*, 1938-NMSC-034, ¶ 8, 42 N.M. 381, 79 P.2d 922 (internal quotation marks and citation omitted). In this case, Defendant had been placed in the office by loss prevention personnel, was told that the police were called, and was clearly on notice that he was suspected of shoplifting when Officer Knight arrived and promptly handcuffed him.

**{22}** In further support of the proposition that the objective indicia lead to the conclusion that Defendant was placed under arrest from the outset, the State points out that the district court granted Defendant's motion to suppress statements made to the officers while he was detained. While the State did concede the issue of custodial interrogation prior to the suppression hearing, the district court was free to disregard that concession after hearing the testimony of the two officers and viewing the videotape. However, after presentation of evidence, the district court stated that "the State stipulates that the statements were taken while . . . Defendant was subject to a custodial interrogation, and he was not given Miranda [w]arnings, so that motion is granted." Implicit in this ruling is a finding by the district court that Defendant was either under formal arrest or restrained to the level associated with formal arrest at the time he was questioned by the officers. *See State v. Wilson*, 2007-NMCA-111, ¶ 1, 142 N.M. 737, 169 P.3d 1184 (holding that the test for "in custody" for *Miranda* purposes is "whether the defendant's freedom of movement is restrained by formal arrest or of the degree associated with a formal arrest"). Because all statements to the officers were suppressed, we reason that the district court found the custody to have begun at the start of Defendant's encounter with the officers.

**{23}** The district court did not make a finding as to the objective indicia of arrest, namely the use of handcuffs and continued detention in the loss prevention office for an extended period of time. However, these facts are uncontradicted. Because the circumstances, viewed objectively, indicate that Defendant's freedom of action was restricted by the officers and he was detained in a manner consistent with formal arrest, we determine that Defendant was placed under arrest at the point he was handcuffed by Officer Knight.

**{24}** We recognize that in some circumstances the use of handcuffs does not elevate a detention to an arrest. For example, in a traffic stop based on a report of a drive-by shooting, we held that the stop was not considered an arrest, even though the officers made the occupants exit the vehicle one by one at gunpoint and then placed each one in handcuffs. *State v. Lovato*, 1991-NMCA-083, ¶ 24, 112 N.M. 517, 817 P.2d 251. We stated that "[w]henever the police confront an individual reasonably believed to present a serious and imminent danger to the safety of the police and public, they are justified in taking reasonable steps to reduce the risk." *Id.* ¶ 31 (internal quotation marks and citation omitted). Similarly,

7

in *Bailey v. United States*, __ U.S. __, ___, 133 S. Ct. 1031, 1042-43 (2013), the United States Supreme Court stated that "[d]etentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake." Chief among these interests is "risk of harm to the officers." *Id*. at 1038 (internal quotation marks and citation omitted). In *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) the Court held that "[i]nherent in [the] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention" and found the use of handcuffs in that case to be reasonable.

**{25}** The facts in this case do not indicate the presence of any special law enforcement interests to explain the use of handcuffs. Instead, the premise expressed in *United States v. Newton*, 369 F.3d. 659, 676 (2d Cir. 2004) that "[h]andcuffs are generally recognized as a hallmark of a formal arrest" only serves to support our conclusion that Defendant was arrested when handcuffed by Officer Knight.

## 1. Warrantless Arrest Under the Fourth Amendment

**{26}** Defendant was arrested without a warrant. As with searches, we strongly prefer arrests pursuant to a warrant. *State v. Rivera*, 2010-NMSC-046, ¶ 2, 148 N.M. 659, 241 P.3d 1099. The United States Supreme Court addressed warrantless arrests under the Fourth Amendment in *United States v. Watson*, 423 U.S. 411, 417 (1976), stating that "[t]he usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony" (internal quotation marks and citation omitted). *Watson* further explained that this usual rule encompasses misdemeanors committed in the officers' presence as well:

> The cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest.

423 U.S. at 418. *Watson* dealt with a federal statute authorizing Postal Service Officers to arrest without warrant persons they had reasonable grounds to believe had committed, or were committing, a felony offense under the laws of the United States. The majority in *Watson* found that the statute reflected a determination on the part of the legislature that a warrantless arrest in that situation was reasonable, and the Court was reluctant to second guess that determination. *Id*. at 416. The Court held that "[t]he necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Id*. at 417.

**{27}** New Mexico's "misdemeanor arrest rule is a holdover from the common law distinction between warrantless arrests for felonies and for misdemeanors." *City of Santa*

*Fe v. Martinez*, 2010-NMSC-033, ¶ 7, 148 N.M. 708, 242 P.3d 275 (internal quotation marks and citation omitted); *see also Boone*, 1986-NMSC-100, ¶ 9 (stating that "[w]e long have held that, in the absence of statutory authority, a duly authorized peace officer may make an arrest for a misdemeanor without a warrant only if he has probable cause or reasonable grounds to believe that the offense has been committed in his presence").

**{28}** Defendant argues that the classic formulation of the misdemeanor arrest rule precluded the officers in this case from arresting Defendant for misdemeanor shoplifting without a valid arrest warrant because he did not commit the crime in the officers' presence. We disagree. Professor LaFave, in analyzing the question of whether the "in presence" requirement is constitutional in nature, states that "the consensus is that the answer here is . . . no" and that the Supreme Court has "never held that a warrant for lesser offenses occurring out of the presence of an officer is constitutionally required." 3 LaFave, *supra* § 5.1(b) (internal quotation marks omitted). Similarly, our Supreme Court has recognized that "[a]lthough the 'in presence' requirement of the rule remained intact, over time, the common law rule has been further limited by both the [L]egislature and the courts." *City of Santa Fe*, 2010-NMSC-033, ¶ 7 (alterations, internal quotation marks, and citation omitted). One such legislative limitation is NMSA 1978, Section 30-16-23 (1965), which allows, without reference to any "in the presence" requirement, a law enforcement officer to arrest without warrant any person he has probable cause for believing has committed the crime of shoplifting.

**{29}** Probable cause means a reasonable probability that an offense has been or is being committed. *State v. Williamson*, 2009-NMSC-039, ¶ 31, 146 N.M. 488, 212 P.3d 376. At the suppression hearing, both sides essentially agreed that the officers had probable cause to arrest Defendant for shoplifting based on the information that the officers learned from loss prevention personnel. Testimony from Officers Knight and Hsu, which was uncontradicted at the hearing and not explicitly found to be incredible by the district court, was that the officers were dispatched to Sportsman's Warehouse in reference to a shoplifting. Upon arrival, the officers spoke with loss prevention personnel, who told the officers that the Defendant was observed placing two flashlights under his jacket and then attempting to leave the store without paying.

**{30}** Thus, the warrantless arrest of Defendant, statutorily authorized and based on probable cause, did not run afoul of the classic misdemeanor arrest rule and satisfied the requirements of the Fourth Amendment.

## 2. Interstitial Analysis of Warrantless Arrest Under New Mexico Law

**{31}** However, a determination of lawfulness under the Fourth Amendment does not end our inquiry. Article II, Section 10 of the New Mexico Constitution guarantees a "broad right" to be "free from unwarranted government intrusions." *State v. Gutierrez*, 1993-NMSC-062, ¶ 46, 116 N.M. 431, 863 P.2d 1052. Our Supreme Court has held that it is "well-established that Article II, Section 10 provides more protection against unreasonable

searches and seizures than the Fourth Amendment." *State v. Leyva*, 2011-NMSC-009, ¶ 51, 149 N.M. 435, 250 P.3d 861; *see also Rivera*, 2010-NMSC-046, ¶ 2 (stating that "[w]e have consistently interpreted the search and seizure provision of the New Mexico Constitution . . . as imposing a greater requirement for a warrant than its federal counterpart"). Therefore, we must analyze whether Defendant would have greater protection under our State Constitution. *Gomez*, 1997-NMSC-006, ¶¶ 19, 20, 22. In all cases, "the ultimate question is whether the search and seizure was reasonable." *State v. Martinez*, 1980-NMSC-066, ¶ 18, 94 N.M. 436, 612 P.2d 228.

**{32}** Our Supreme Court squarely addressed the reasonableness of warrantless arrests for the first time in *Campos v. State*, 1994-NMSC-012, 117 N.M. 155, 870 P.2d 117. The Court, siding with the dissenting Justices in *Watson*, held that in order for a public felony arrest without warrant to be reasonable under our constitution it must be based on both probable cause and sufficient exigent circumstances. *Campos*, 1994-NMSC-012, ¶ 14. Exigent circumstances "means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape . . . or destruction of evidence." *State v. Copeland*, 1986-NMCA-083, ¶ 14, 105 N.M. 27, 727 P.2d 1342.

**{33}** *Campos*, like *Watson*, involved a statute. Pursuant to NMSA 1978, Section 30-31-30 (1972), an officer had statutory authority to make a warrantless arrest where an offense under the Controlled Substances Act was committed in his presence, or where he had probable cause to believe a felony offense under the act was being, or had been, committed. The Court held that "[w]arrantless arrests made under the authority of the statute may be presumed reasonable but that presumption may be rebutted under our interpretation of what is constitutional." *Campos*, 1994-NMSC-012, ¶ 7. The Court explained that "statutory provisions regarding warrants must be considered *in pari materia* with Article II, Section 10 of our constitution." *Id*. The Court stated that "our constitution and case law lead us to hold that for a warrantless arrest to be reasonable the arresting officer must show that the officer had probable cause to believe that the person arrested had committed or was about to commit a felony and some exigency existed that precluded the officer from securing a warrant." *Id*. 14. Thus, the necessity for both probable cause and exigent circumstances applies even if the statutory authority for the arrest only requires probable cause.

**{34}** While *Campos* addressed the reasonableness of a warrantless public arrest in the felony context, we see no reason to deviate from its rationale in the context of a misdemeanor public arrest. In fact, it would be incongruent to require an arrest warrant in felony cases where no exigent circumstances exist, but not for misdemeanor cases similarly lacking. "Because felonies are a greater concern with respect to public safety, officers are granted more latitude when conducting investigations of such crimes." *City of Santa Fe*, 2010-NMSC-033, ¶ 12. This notion undergirds the misdemeanor arrest rule's usual requirement for an arrest warrant where the offense is not committed in the officer's presence. Thus, we hold that the narrowly drawn exceptions to the misdemeanor arrest rule, including Section 30-16-23, are subject to the recognized requirement that the warrantless

arrest be reasonable under Article II, Section 10 of the New Mexico Constitution.

**{35}** In reviewing a warrantless arrest for exigent circumstances and to determine reasonableness, we "limit our inquiry . . . to whether it was reasonable for the officer not to procure an arrest warrant." *Campos*, 1994-NMSC-012, ¶ 15. In this case, the State presented no evidence of exigent circumstances and no reason as to why the officers did not attempt to secure an arrest warrant. Defendant had been detained by loss prevention personnel and the evidence of the crime, two flashlights, had been removed from his person. Defendant sat in the loss prevention room, waiting for officers to arrive, even though he was not restrained in any way. He was compliant and cooperative when first encountered by Officer Knight. The actual act of alleged shoplifting was captured on video. Under these facts, Defendant presented no imminent threat to escape or destroy evidence.[2]

**{36}** We conclude that Defendant was placed under arrest when he was handcuffed by Officer Knight. The classic misdemeanor arrest rule is inapplicable to this case because there was specific statutory authority for the arrest even though the offense was not committed in the officers' presence. However, in order to be reasonable under Article II, Section 10 of the New Mexico Constitution, a public warrantless arrest must be based on both probable cause and exigent circumstances. Although the officers had probable cause in this case to arrest Defendant, the State made no showing of exigent circumstances to support the arrest. Therefore, the warrantless arrest was not valid under the New Mexico Constitution. The district court did not err in failing to uphold the search as incident to a lawful arrest.

## 2.    INEVITABLE DISCOVERY

**{37}** The State's second point on appeal is that the district court required too high a standard of proof on the issue of whether the inevitable discovery doctrine, an exception to the exclusionary rule, applied in this case. This argument is based on the district court's finding that the second *Barragan* factor was not met. We need not resolve this argument given our ruling concerning the impropriety of the arrest. For the inevitable discovery doctrine to apply, "the lawful means by which the evidence could have been attained must be wholly independent of the illegal actions." *State v. Wagoner*, 2001-NMCA-014, ¶ 13, 130 N.M. 274, 24 P.3d 306. The State depended on an anticipated inventory search at the Metropolitan Detention Center to provide the "alternate source of evidence . . . pending, but

---

[2]Aware that the opinion resolves the case on a basis likely not anticipated by the parties, we submitted a draft of the opinion to them for response and allowed supplemental briefing. The State argued in part that it did not have a reasonable opportunity to develop facts which would support a finding of exigent circumstances. We reject the argument on the common-sense basis that the record already reflects a complete picture of the events of the day and as a matter of law they cannot support a colorable argument, much less a finding of exigency.

11

not yet realized." *Id*. ¶ 15. Because the inventory search itself was contingent on Defendant being arrested and then incarcerated at MDC, we conclude that the inventory search was not wholly independent of the illegal arrest. Therefore, in this case the inevitable discovery doctrine does not save from suppression the physical evidence discovered as a result of the search conducted incident to an unlawful arrest.

**CONCLUSION**

**{38}** The warrantless search of Defendant's belongings was not incident to a lawful arrest under Article II, Section 10 of the New Mexico Constitution, and therefore did not fall within any well-delineated exception to the warrant requirement. The evidence would not have been inevitably discovered, as any inventory search that may have followed would not have been independent of the illegal arrest. Thus, the district court did not err in suppressing the items found in Defendant's backpack and cigarette pack. We affirm.

**{39}   IT IS SO ORDERED**.

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Paananen*, No. 31,982**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Interstitial Analysis
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL LAW**
Shoplifting

**CRIMINAL PROCEDURE**
Arrest Warrant

Motion to Suppress
Search and Seizure
Warrantless Arrest
Warrantless Search

**EVIDENCE**
Suppression of Evidence