IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-031

Filing Date:  September 10, 2015

Docket No. 34,526

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

ERNEST PAANANEN,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Jacqueline D. Flores, District Judge

Hector H. Balderas, Attorney General
Nicole Beder, Assistant Attorney General
Jacqueline Rose Medina, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}     Over two decades ago, in *Campos v. State*, 1994-NMSC-012, ¶ 1, 117 N.M. 155, 870 P.2d 117, this Court held that under our New Mexico Constitution a felony arrest must be preceded by an arrest warrant, even when supported by probable cause, unless exigent circumstances made securing a warrant impractical. Our opinion in *Campos* addressed a situation in which the authorities had ample time to obtain an arrest warrant and provided no good reason for failing to do so. In the present case, by contrast, police officers made

1

their arrest at the scene of the crime, shoplifting, without any prior opportunity to secure a warrant. In the course of our analysis, we explain our reasons for differing from the decision reached by the Court of Appeals, and reverse the opinion upholding the suppression of evidence below. We remand for further proceedings.

**BACKROUND**

**{2}** Surveillance cameras at Sportsman's Warehouse in Albuquerque caught Defendant Ernest Paananen placing two flashlights under his jacket and then leaving the store without paying. Moments later, the store's loss prevention team apprehended Defendant and returned him to the store. The loss prevention team placed Defendant in a back room, frisked him, and called the police. During the frisk, a loss prevention employee placed Defendant's possessions on the table, along with the stolen flashlights. The employee did not go through Defendant's backpack.

**{3}** Albuquerque Police Department Officers Cole Knight and Andrew Hsu arrived at the store, and Officer Knight immediately handcuffed Defendant. Officer Hsu searched Defendant's backpack and found hypodermic needles. When questioned about the needles, Defendant admitted that he had tried to use drugs the day before but said he did not currently possess any drugs.

**{4}** While waiting for a copy of the surveillance video, Officer Knight searched through Defendant's possessions on the table and found a cigarette pack. Officer Knight looked in the cigarette pack and found a substance he believed to be heroin, a hunch later confirmed by a field kit test. Along with shoplifting, the State charged Defendant with possession of a controlled substance and possession of drug paraphernalia.

**{5}** Subsequently, Defendant sought to suppress all evidence seized at the store, arguing that the officers had conducted an unreasonable, warrantless search in violation of both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In response, the State emphasized that the officers had specific statutory authority in shoplifting cases to arrest Defendant without a warrant. *See* NMSA 1978, Section 30-16-23 (1965) ("Any law enforcement officer may arrest *without warrant* any person [the officer] has probable cause for believing has committed the crime of shoplifting. . . ." (emphasis added)). The State then argued that because the arrest was valid, the officers conducted a lawful search of Defendant in the course of that arrest.

**{6}** At the suppression hearing, the State argued that the search 1) was incident to a valid arrest for shoplifting, and 2) was the result of inevitable discovery pursuant to that arrest. Unpersuaded, the district court suppressed all evidence seized, concluding that "the State ha[d] failed to establish that the search was conducted pursuant to any exception to the warrant requirement . . . ." The State appealed the suppression order to the Court of Appeals. *See* NMSA 1978, § 39-3-3(B)(2) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state to the . . . court of appeals . . . within ten days from a[n] . . .

order . . . suppressing or excluding evidence. . . .”).

**Court of Appeals opinion**

**{7}**     The Court of Appeals affirmed the suppression, holding "that the [warrantless] arrest of Defendant was not lawful under Article II, Section 10 of the New Mexico Constitution." *State v. Paananen*, 2014-NMCA-041, ¶ 2, 321 P.3d 945, *cert. granted*, 2014-NMCERT-003 (No. 34,526, Mar. 28, 2014). The Court acknowledged that a warrantless search may be conducted incident to a lawful arrest. *Id.* ¶ 17. The validity of the search, therefore, depended on the lawfulness of the arrest, and in this case Defendant was apprehended without an arrest warrant. To determine the validity of the warrantless arrest, the Court of Appeals focused heavily on *Campos*, 1994-NMSC-012, one of this Court's first opinions interpreting Article II, Section 10 of the New Mexico Constitution distinctly from its federal counterpart, the Fourth Amendment to the United States Constitution.

**{8}**     In *Campos*, this Court held that an arrest without a warrant was valid only if both supported by probable cause and made under sufficient exigent circumstances. 1994-NMSC-012, ¶ 1. After determining that "Defendant presented no imminent threat to escape or destroy evidence," and that "the State made no showing of exigent circumstances," the Court of Appeals held that the arresting officers first needed a warrant to arrest Defendant. *Paananen*, 2014-NMCA-041, ¶ 35-36. Only then could they justify searching Defendant incident to a lawful arrest, despite the undisputed presence of probable cause. *See id.* Accordingly, because the officers arrested Defendant without an arrest warrant, the Court of Appeals held that the arrest and subsequent search were unconstitutional and suppression of the evidence was appropriate. *Id.*

**{9}**     In resolving the case at bar, we consider both federal and state constitutional precedent, especially our opinion in *Campos*, because the lawfulness of Defendant's warrantless arrest at Sportsman's Warehouse—and the search incident thereto—hangs in the balance.

**DISCUSSION**

**{10}**     "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957.
**The State properly preserved the issue of a search incident to an arrest**

**{11}**     Initially, we uphold the Court of Appeals' decision that the State properly preserved its theory of a search incident to an arrest. While the State initially argued only that the search of Defendant was the result of an inevitable discovery, the State clarified during the suppression hearing that it was also relying on an alternative theory of search incident to arrest. We agree with the Court of Appeals that the State sufficiently asserted the issue and adduced the evidence necessary to support the legal principle. Defendant, moreover, had an

3

opportunity to respond below. Thus, we are satisfied that the issue was preserved for review on appeal. *See Paananen*, 2014-NMCA-041, ¶ 15.

**Reasonableness of a warrantless arrest under the Fourth Amendment**

**{12}** To determine the constitutionality of Defendant's arrest, under our interstitial approach to constitutional analysis, before looking to our New Mexico Constitution we first decide whether the arrest was lawful under the U.S. Constitution. *State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Only if the federal constitution would not provide protection from the law enforcement activity under consideration, do we then turn to the civil liberties protected under Article II, Section 10 of the New Mexico Constitution. *Gomez*, 1997-NMSC-006, ¶ 19.

**{13}** The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures*, shall not be violated . . . ." U.S. Const. amend. IV (emphasis added). "To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks, citation, and brackets omitted).

**{14}** Almost 40 years ago, in *United States v. Watson*, 423 U.S. 411 (1976), the U.S. Supreme Court squarely applied these principles to determine the constitutionality of a warrantless arrest supported by probable cause and explicit statutory authority, similar to the statutory authority to arrest in cases of shoplifting in New Mexico. *See* Section 30-16-23 ("Any law enforcement officer may arrest *without warrant* any person [the officer] has probable cause for believing has committed the crime of shoplifting. . . ." (emphasis added)). In *Watson*, a statute authorized postal service officers to "make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony." *Id.* at 415. Watson was suspected of possessing stolen credit cards. *Id.* at 412. An informant notified the postal inspector, and the inspector subsequently set up a sting operation to catch Watson in possession of the stolen credit cards. *Id.* at 412-13. The informant notified the postal inspector six days before the sting operation. *Id.* at 426 (Powell, J., concurring). Once Watson arrived at the intended meeting, officers arrested him. *Id.* at 413. After receiving permission to search Watson's vehicle, officers discovered two stolen credit cards. *Id.*

**{15}** The main issue on appeal was whether the warrantless arrest violated the Fourth Amendment. *Watson*, 423 U.S. at 412-14. The U.S. Court of Appeals for the Ninth Circuit held that the arrest was not constitutional, despite the presence of probable cause, because no exigent circumstances justified the absence of an arrest warrant. *Id.* at 414. Notably, the postal inspector had probable cause for Watson's arrest six days before the sting operation. *Id.* at 413-14. "The Government made no effort to show that circumstances precluded the obtaining of a warrant, relying instead for the validity of the arrest solely upon the showing

4

of probable cause to believe that respondent had committed a felony." *Id.* at 426 (Powell, J., concurring). Thus, according to the Ninth Circuit the postal inspector should have obtained an arrest warrant as he "concededly had time to do so." *Id.* at 414.

**{16}** The U.S. Supreme Court disagreed, determining that probable cause alone was a sufficient basis for a warrantless felony arrest. In reaching that determination, the Court considered the import of the statute that authorized the arrests and noted that "there is a strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is reasonable." *Id.* at 416 (internal quotation marks and citation omitted). Additionally, the Court surveyed several prior cases in which it had upheld the validity of warrantless arrests based solely on a determination that such arrests were supported by probable cause. *See, e.g., id.* at 417 (concluding in its discussion of *Henry v. United States*, 361 U.S. 98 (1959), that "[t]he necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest."). The Court concluded that the statute and case law supported the constitutionality of a warrantless felony arrest as long as it was supported by probable cause. *Watson*, 423 U.S. at 416-24.

**{17}** In addition to statutory authority for a warrantless arrest, the U.S. Supreme Court looked to the common law standard "that a peace officer [is] permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground [probable cause] for making the arrest." *Id.* at 418. *See also* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.1(b), at 15 (5th ed. 2012) (citing *Draper v. United States*, 358 U.S. 307 (1959), for the proposition that the "'reasonable grounds' test . . . and the 'probable cause' requirement of the Fourth Amendment 'are substantial equivalents.'"). Moreover, " '[t]he rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, has been generally held by the courts of the several [s]tates to be in force in cases of felony punishable by the civil tribunals.' " *Id.* at 419, quoting *Kurtz v. Moffitt*, 115 U.S. 487 (1885). Continuing, the Court observed that although it would be "wise" for law enforcement officers to obtain an arrest warrant when it is "practicable to do so," *Watson*, 423 U.S. at 423, the Court declined to read that prudential consideration into the Fourth Amendment.

> [W]e decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like.

*Watson*, 423 U.S. at 423-24.

**{18}** *Watson* remains good law today. Accordingly, there is no doubt that the warrantless

5

arrest of Defendant did not violate his rights under the United States Constitution. That, in turn, would make the subsequent search incident to that arrest lawful as well, at least under the Fourth Amendment. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969) (recognizing that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested"). Under our interstitial analysis we now proceed to examine this case under Article II, Section 10 of the New Mexico Constitution, and *Campos* in particular, to determine whether our New Mexico Constitution would require a warrant where the federal constitution does not. *See Gomez*, 1997-NMSC-006, ¶ 19.

**Reasonableness of a warrantless arrest under Article II, Section 10 of the New Mexico Constitution**

**{19}**    In *Campos*, this Court held "that for a warrantless arrest to be reasonable the arresting officer must show that the officer had probable cause to believe that the person arrested had committed or was about to commit a felony and some exigency existed that precluded the officer from securing a warrant." *Campos*, 1995-NMSC-012, ¶ 14. Tellingly, our opinion in *Campos* was directed squarely at *Watson* and expressly disavowed the *Watson* holding that a warrant was not required, even when officers had sufficient time and opportunity to obtain one.

**{20}**    Similar to *Watson*, a state statute in *Campos* authorized officers to make a warrantless arrest of any individual based solely on probable cause that a suspect was violating the Controlled Substances Act. *Campos*, 1994-NMSC-012, ¶ 4. The officer received information from a confidential informant that Campos would be conducting a drug transaction the next morning. *Id.* ¶ 2. "The informant told Officer Lara that Campos would be driving either a silver and black pickup truck or a small blue car down one of two routes to a location on East Deming Street in Roswell at about 8:00 a.m." *Id.* This information was corroborated by evidence that "Officer Lara had been investigating Campos for approximately one year, knew that Campos used vehicles like those described by the informant, and believed that Campos engaged in illegal drug activity." *Id.* The informant had proven to be reliable and accurate on previous occasions.

**{21}**    In response, the officers set up a surveillance team. *Id.* ¶ 2. Officer Lara explained that he did not first secure an arrest warrant from a magistrate because he wanted to corroborate the information from the informant. The information provided to the officers proved to be accurate. When the defendant arrived at the transaction scene, he was arrested without a warrant. *Id.* ¶ 3. After a search of the defendant and his car, officers discovered heroin. *Id.*

**{22}**    On certiorari review, this Court acknowledged the *Watson* rule that "a warrantless public arrest of a felon based on *probable cause* will be upheld regardless of whether the officer could have secured an arrest warrant." *Campos*, 1994-NMSC-012, ¶ 9 (emphasis added). This Court then recognized that since New Mexico strongly favors warrants, Article II, Section 10 of the New Mexico Constitution provides greater protection than the Fourth

6

Amendment. *Campos*, 1994-NMSC-012, ¶ 10. Accordingly, this Court "[did] not assume that warrantless public arrests of felons are constitutionally reasonable." *Id.*

**{23}** In its analysis of the constitutionality of the warrantless arrest, the *Campos* Court pointed out, the crucial "inquiry in reviewing warrantless arrests [is] whether it was reasonable for the officer not to procure an arrest warrant." *Id.* ¶ 15. The Court appears to have been strongly influenced by the factor of time. Given the early presence of probable cause and adequate opportunity to obtain a warrant prior to the arrest, the officers had no good reason not to get the warrant. Thus, because "Officer Lara had probable cause to obtain a warrant on December 7 for the arrest of Campos on December 8," there were no "sufficient exigent circumstances to make the warrantless arrest of Campos reasonable." *Id.* ¶¶ 16-17.

**{24}** In contrast, in the case at bar, time was not on the officers' side. After they arrived at the arrest scene, the officers clearly developed probable cause to arrest Defendant based on their review of the video tape and the evidence of shoplifting displayed on the table before them. Unlike either *Campos* or *Watson*, however, the officers did not have this information or time to act on it prior to arriving on scene, and thus could not have gotten an arrest warrant before responding to the call.

**{25}** Given that it was not reasonably practical for the officers to obtain an arrest warrant before responding to the scene, they faced three alternatives after arriving on scene and gathering information amounting to probable cause. First, the officers could arrest Defendant on scene, as they did. Second, the officers could have continued to detain Defendant at the store while going to court to obtain the warrant, an effort likely to have taken significant time, during which Defendant would have remained under a de facto warrantless arrest at the store. *See, e.g.*, *State v. Werner*, 1994-NMSC-025, ¶ 16, 117 N.M. 315, 871 P.2d 971 (holding, after consideration of the "combination of the length of time of detention, the place of detention, and the restriction on Werner's freedom of movement," that a forty-five minute detention in a police car amounted to a de facto arrest). Finally, the officers could have released Defendant while they went to secure the warrant in the hope they could relocate and arrest him later, an expenditure of resources seemingly disproportionate to the crime of shoplifting and a risk our Legislature has declared unacceptable. *See* § 30-16-23 (authorizing warrantless arrests of shoplifting with probable cause). In our view, the officers chose the only reasonable approach, and the facts of this case provide a prime example of an "exigency . . . that precluded the officer[s] from securing a warrant." *See Campos*, 1994-NMSC-012, ¶ 14.

**{26}** The phrase "exigent circumstances" has been described in our jurisprudence as including "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Campos*, 1994-NMSC-012, ¶ 11 (quoting *State v. Copeland*, 1986-NMCA-083, ¶ 14, 105 N.M. 27, 727 P.2d 1342). The Court of Appeals appears to have relied upon this language in finding a lack of exigency when it reviewed this case below. *See Paananen*, 2014-NMCA-041, ¶¶ 32-36. The quoted language, however, is not an exclusive list. As

*Campos* provides—and we now hold—there are other situations in which an exigency not necessarily amounting to an imminent threat of danger, escape, or lost evidence will be sufficient to render reasonable a warrantless public arrest supported by probable cause under the totality of the circumstances. *See Campos*, 1994-NMSC-012, ¶ 14 (declaring that "exigency will be presumed" where an officer observes the commission of a felony, without reference to imminent danger, escape, or destruction of evidence). An on-the-scene arrest supported by probable cause will usually supply the requisite exigency.

**{27}** We reiterate our holding in *Campos* that the overarching "inquiry in reviewing warrantless arrests [is] whether it was reasonable for the officer not to procure an arrest warrant," and that a warrantless arrest supported by probable cause is reasonable if "some exigency existed that precluded the officer from securing a warrant." *Id.* ¶ 14-15. Accordingly, when the police have ample time to obtain a warrant before making an arrest, as was the case in *Campos*, our New Mexico Constitution compels them to do so. *See id.* ¶ 15 ("We will not hesitate . . . to find a warrantless arrest unreasonable if no exigencies existed to excuse the officer's failure to obtain a warrant."). However, where as here sufficient exigent circumstances make it not reasonably practicable to get a warrant, one is not required.

**{28}** That this was a misdemeanor arrest does not materially alter the analysis. We have previously held that exigent circumstances can justify a warrantless arrest for misdemeanor driving while intoxicated. *See City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶¶ 14, 17, 148 N.M. 708, 242 P.3d 275 (evanescent nature of alcohol in the body presents sufficient exigent circumstances to justify warrantless arrest). More recently, we upheld a warrantless arrest for misdemeanor domestic battery as long as the officer apprehended the suspect reasonably close to the scene of the crime. *See State v. Almanzar*, 2014-NMSC-001, ¶ 2, 316 P.3d 183; NMSA 1978, § 31-1-7(A) (1979, amended 1995) ("[A] peace officer may arrest a person and take that person into custody without a warrant when the officer is at the scene of a domestic disturbance and has probable cause."). The same principle of probable cause plus exigent circumstances justifies an arrest for misdemeanor shoplifting made at the scene of the crime.

**The search was reasonable because it was incident to a valid arrest**

**{29}** In New Mexico, a warrantless search is presumed unreasonable unless the search fits within a judicially recognized exception to the warrant requirement. *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95. "One of the most firmly established exceptions to the warrant requirement is the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." *Id.* ¶ 13 (internal quotation marks and citations omitted). "Given the exigencies always inherent in taking an arrestee into custody, a search incident to arrest is a reasonable preventative measure to eliminate any possibility of the arrestee's accessing weapons or evidence, without any requirement of a showing that an actual threat exists in a particular case." *Id.* ¶ 25, n.1.

**{30}** Officer Knight testified at the suppression hearing that it is standard procedure to search a suspect incident to an arrest to "make sure they don't take contraband to jail . . . ." Officer Knight explained that searches are performed thoroughly because "[i]t's been my experience that they can have little razor blades and such in their property. We're pretty thorough to make sure there's no weapons first off." Finally, counsel for the State asked Officer Knight if opening up small containers was part of the procedure to protect against small razor blades, to which Officer Knight answered, "[a]bsolutely."

**{31}** Once Officer Knight placed Defendant in handcuffs, Defendant was deemed under arrest. Pursuant to protocol, Officer Knight opened the cigarette package that was sitting on the table and discovered heroin. This search, while performed without a warrant, was conducted incident to a valid arrest. Hence, the search fits within a judicially recognized exception to the warrant requirement and was reasonable.

**CONCLUSION**

**{32}** Defendant's arrest, though without a warrant, was reasonable under the New Mexico Constitution. The subsequent warrantless search of Defendant fits a judicially recognized exception to the warrant requirement and was therefore also constitutionally reasonable. Accordingly, we reverse the Court of Appeals and remand for further proceedings.

**{33}** **IT IS SO ORDERED.**

                                                  _____

                                                  **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**