The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 3, 2022</u>

**No. A-1-CA-39059**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**APRIL L. VEITH,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Curtis R. Gurley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellee

# OPINION

**BOGARDUS, Judge.**

{1}     Defendant April Veith was charged by criminal complaint in magistrate court with petty misdemeanor battery, contrary to NMSA 1978, Section 30-3-4 (1963). The magistrate court dismissed the criminal complaint, and the State appealed to the district court. The district court determined Defendant's arrest was illegal and remanded to magistrate court for imposition of the magistrate court's dismissal order. The State appeals the district court's remand order and argues (1) NMSA 1978, Section 30-3-6 (1983) provided statutory authority for Defendant's arrest; (2) Defendant's warrantless arrest was not a violation of the New Mexico Constitution; and (3) the district court erred in concluding dismissal was the appropriate remedy. We reverse.

## BACKGROUND

{2}     The parties stipulated that the following facts from the arresting officer's probable cause statement were true for purposes of resolving Defendant's motion. Deputy Deprez was dispatched to a middle school parking lot based on a call in which someone reported that "April" (later identified as Defendant) was attacking the caller's mother outside of the school gym. Upon his arrival at the school, Deputy Deprez observed multiple people attempting to keep Defendant and Jennifer Hebert apart. Deputy Deprez noticed Hebert was taking deep breaths, seemed emotional,

and that Defendant had blood on her face. He made sure neither party needed medical attention before beginning his on-the-scene investigation.

{3}     Deputy Deprez spoke to Hebert, Defendant, Defendant's husband, and two witnesses while at the scene. Hebert told Deputy Deprez that as she was getting ready to leave and as she was putting her children in her car, Defendant walked up to her and told her she did not have any "beef" with her, but then got in her face and started yelling at her. Hebert stated that Defendant was trying to get her to fight. Hebert explained she told Defendant she did not want to fight and yelled for Defendant's husband to come get Defendant. Hebert told Deputy Deprez that Defendant pushed her, grabbed her by her shirt, shoved her against a wall, and asked if she was scared of her. Hebert went on to say that Defendant began to choke her so she defended herself by punching Defendant in the face. She said they both fought until Defendant's husband and another person separated them.

{4}     Deputy Deprez spoke to Defendant who said she had wanted to confront Hebert about a guy they both previously dated, but that she did not have any "beef" about it. Defendant stated Hebert pushed her and she had to defend herself. Later, Defendant changed her story and stated Hebert initially pulled her hair. Deputy Deprez could smell alcohol on Defendant's breath and asked her if she had anything to drink that day. Defendant answered that she had been drinking.

**{5}** Deputy Deprez spoke to Defendant's husband who explained that when he and Defendant arrived at the school, Defendant approached Hebert. He stated he knew the two had a previous conflict so he attempted to avoid the situation by remaining in his car. He said he did not see who started the altercation, but saw the two fighting so he separated his wife from the situation. Deputy Deprez also spoke to two witnesses who explained Defendant initiated the physical altercation. After completing his interviews of the parties and witnesses, Deputy Deprez arrested Defendant without a warrant and took her to the detention center. Defendant was later charged with battery.

**{6}** During proceedings in magistrate court, Defendant filed a motion to dismiss or in the alternative to suppress evidence, arguing the arrest violated the misdemeanor arrest rule and that the criminal complaint should be dismissed or statements and evidence should be suppressed because they were tainted by her unlawful arrest. The magistrate court entered an order dismissing the complaint with prejudice. The State appealed to the district court, and in response, Defendant renewed her motion to dismiss or in the alternative to suppress evidence. After a hearing on the motion, the district court remanded the matter to the magistrate court for imposition of the dismissal order.

**DISCUSSION**

{7}     The State pursues three related but distinct arguments: (1) Section 30-3-6 provided statutory authority for Defendant's arrest; (2) the arrest was a reasonable warrantless arrest under the New Mexico Constitution; and (3) even if the arrest was illegal, dismissal was not the appropriate remedy.

{8}     The question we must address is whether Defendant was lawfully arrested without a warrant. Our state strongly prefers arrests be made pursuant to a warrant. *State v. Rivera*, 2010-NMSC-046, ¶ 23, 148 N.M. 659, 241 P.3d 1099. Under the Fourth Amendment of the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. In *United States v. Watson*, 423 U.S. 411 (1976), the U.S. Supreme Court applied Fourth Amendment jurisprudence to uphold the constitutionality of a warrantless arrest supported by probable cause and explicit statutory authority. The Fourth Amendment permits warrantless arrests when the arrest is supported by statutory authority and probable cause. *See State v. Paananen*, 2015-NMSC-031, ¶¶ 17-18, 357 P.3d 958 (holding a warrantless arrest with probable cause, *see* NMSA 1978, § 30-16-23 (1965), which permits warrantless arrests with probable cause for shoplifting, did not violate the Fourth Amendment based on *Watson*). Article II, Section 10 of the New Mexico Constitution requires that all warrantless arrests be "reasonable." *Campos v. State*, 1994-NMSC-012, ¶ 5, 117 N.M. 155, 870 P.2d 117. Under our New Mexico

4

Constitution, warrantless arrests based on statutory authority are presumed constitutional, but require an exigency that precluded the arresting officer from procuring a warrant. *Id.* ¶ 14.

{9}     To address the State's appeal, we must first determine if Section 30-3-6 provided statutory authority for the warrantless arrest. We then turn to the State's contention that the arrest was reasonable under the New Mexico Constitution. Because the appeal is based on Defendant's motion to suppress, we are presented with a mixed question of law and fact. We review "factual matters with deference to the district court's findings if substantial evidence exists to support them, and [the appellate courts] review[] the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

## I.      Section 30-3-6 Provided Statutory Authority for Defendant's Arrest

{10}    The State first appeals the district court's determination that Section 30-3-6 did not apply to the facts of this case. The State argues that the plain language of the statute provides that so long as an arresting officer has probable cause that a battery, or one of the other crimes listed, has occurred, the officer has authority to perform a warrantless arrest. Defendant answers that the Legislature did not intend to create such a broad exception to the misdemeanor arrest rule, and that the statute applies only to arrests that occur in licensed liquor establishments. We agree with the State.

5

{11}     Because Defendant's appeal centers on our interpretation of Section 30-3-6, we interpret the statute de novo. *See State v. Gonzales*, 2019-NMCA-036, ¶ 7, 444 P.3d 1064. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215. However, we will not give effect to the plain meaning of the statute if "this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. If it will, we construe the statute "according to its obvious spirit or reason[.]" *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 3, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted).

{12}     "[W]e additionally consider the context surrounding a particular statute, such as its history, its apparent object, and other related statutes." *State v. Becenti*, 2021-NMCA-060, ¶ 5, 498 P.3d 282 (alteration, internal quotation marks, and citation omitted). We are required to "read the entire statute as a whole so that each provision may be considered in relation to every other part[.]" *State v. Bernard*, 2015-NMCA-089, ¶ 11, 355 P.3d 831 (internal quotation marks and citation omitted). In reading the statute as a whole, we are also to consider "its purposes and consequences." *State v. Martinez*, 2020-NMCA-043, ¶ 34, 472 P.3d 1241.

{13}     We start by considering the misdemeanor arrest rule, which provides context for our discussion of the statute in this case. "The misdemeanor arrest rule provides that generally, in New Mexico, an officer may execute a warrantless misdemeanor arrest only if the offense was committed in the officer's presence." *Milliron v. Cnty. of San Juan*, 2016-NMCA-096, ¶ 28, 384 P.3d 1089 (alteration, internal quotation marks, and citation omitted). "The misdemeanor arrest rule is a holdover from the common law distinction between warrantless arrests for felonies and for misdemeanors." *State v. Ochoa*, 2008-NMSC-023, ¶ 11, 143 N.M. 749, 182 P.3d 130. However, New Mexico has several exceptions to this rule. *Id.* ¶ 12 ("[P]ermitting officers in specific circumstances to make warrantless arrest if the arresting officer has 'reasonable grounds, based on personal investigation which may include information from eyewitnesses'[.]" (quoting NMSA 1978, § 66-8-125(B) (1978)); *see also* NMSA 1978, § 31-1-7(A) (1995) (permitting warrantless arrests for domestic disturbances); *State v. Lyon*, 1985-NMCA-082, ¶ 18, 103 N.M. 305, 706 P.2d 516 (allowing for a police-team exception to the "in the presence" requirement of the misdemeanor arrest rule); § 30-16-23 (permitting warrantless arrests for shoplifting). The Legislature has the authority to enact an exception to the misdemeanor arrest rule, insofar as it does not violate the New Mexico Constitution, *see Carrillo v. My Way Holdings, LLC*, 2017-NMCA-024, ¶ 22, 389 P.3d 1087 (explaining the Legislature may overturn the common law with "clear and

unambiguous language" (internal quotation marks and citation omitted)), and Section 30-3-6 is one such legislatively enacted exception.

**{14}** We next turn to examination of the statute. Section 30-3-6, entitled "Reasonable detention; assault, battery, public affray or criminal damage to property[,]"states:

> A.      As used in this section:
>
>         (1)     "licensed premises" means all public and private rooms, facilities and areas in which alcoholic beverages are sold or served in the customary operating procedures of establishments licensed to sell or serve alcoholic liquors;
>
>         (2)     "proprietor" means the owner of the licensed premises or his manager or his designated representative; and
>
>         (3)     "operator" means the owner or the manager of any establishment or premises open to the public.
>
> B.      Any law enforcement officer may arrest without warrant any persons he has probable cause for believing have committed the crime of assault or battery as defined in [NMSA 1978,] Sections 30-3-1 through 30-3-5 [(1963, as amended through 1977)] . . . or public affray or criminal damage to property. Any proprietor or operator who causes such an arrest shall not be criminally or civilly liable if he has actual knowledge, communicated truthfully and in good faith to the law enforcement officer, that the persons so arrested have committed the crime of assault or battery as defined in Sections 30-3-1 through 30-3-5 . . . or public affray or criminal damage to property.

The statute has two subsections. The first, a definition section, defines "licensed premises," "proprietor," and "operator." Section 30-3-6(A)(1)-(3). "[L]icensed premises" pertains to those premises we traditionally refer to as restaurants and bars.

8

Section 30-3-6(A)(1). The second subsection addresses warrantless arrests for enumerated crimes and includes a provision addressing criminal and civil liability arising from reporting such crimes. Section 30-3-6(B). Because we find no cases in New Mexico that have interpreted Section 30-3-6, its scope is an issue of first impression to this Court.[1]

{15}  Defendant refers to Section 30-3-6 as the "barroom brawl statute that has traditionally been understood to authorize misdemeanor arrests at bars, restaurants, and liquor stores." Defendant argues that the misdemeanor arrest rule is limited to three judicially and statutorily created exceptions for crimes against businesses, crimes related to domestic violence, and crimes arising from driving vehicles, and contends that Section 30-3-6 falls under the exception to the misdemeanor arrest rule for crimes against businesses. Defendant highlights two other statutes that allow for warrantless arrests, NMSA 1978, § 30-16-16(B) (2006) (permitting warrantless arrests for falsely obtaining services or accommodations) and § 30-16-23 (permitting warrantless arrests for shoplifting), and suggests that these three statutes read

---

[1]Defendant cites a nonprecedential federal case, *Montes v. Gallegos*, 812 F. Supp. 1159, 1165 n.7 (D.N.M. 1992), which references Section 30-3-6. In a footnote, *Montes* refers to the defendant's argument regarding "the New Mexico 'barroom fight' statute" and cites to Section 30-3-6, focusing on the statute's probable cause requirement. However, neither the defendant's nor the federal district court's characterization of the statute in *Montes*, is relevant to our analysis. Clearly, Section 30-3-6 permits arrests based upon the occurrence of barroom batteries. At issue here, is whether the statute is limited to that, and only that, context.

together protect specific businesses from low-level crimes, i.e. shoplifting from stores, fighting or damaging property at bars or restaurants, and getting service without paying at restaurants, hotels, and other service-oriented businesses. Defendant contends, therefore, that a common-sense reading of Section 30-3-6 indicates that it only applies when the arrest occurs on licensed premises, that is, an establishment that sells liquor.

{16}     We disagree with Defendant's conclusion. Not one of the three statutes cited by Defendant limits warrantless arrests to those taking place at specific locations. Instead, each statute addresses warrantless arrests for specifically described crimes. *See* §§ 30-16-16(B), -23; § 30-3-6. Although Section 30-3-6 includes civil and criminal liability protection for owners—and their managers and designated representatives—of establishments licensed to sell or serve alcohol, that protection also extends to owners or managers "of any establishment or premises open to the public." Section 30-3-6(A)(3), (B). The liability protection for "licensed premises" is not a sufficient indication—particularly in light of the fact that the statute includes the same protection for owners or managers of any establishment or premises open to the public, *see id.*—that it limits statutory authority for warrantless arrests with probable cause for assault, battery, public affray, or criminal damage to property to be executed at only locations licensed to sell liquor. And the statute's mere inclusion of protection from civil liability for owners and operators of liquor establishments

10

or other business locations open to the public does not bear upon the statute's otherwise broadly stated exception to the misdemeanor arrest rule.

{17} A plain reading of Section 30-3-6 permits a law enforcement officer to arrest people for the enumerated crimes stated therein, including battery, without a warrant when the officer has probable cause. *See State v. Farish*, 2018-NMCA-003, ¶ 6, 410 P.3d 239 ("We begin the search for legislative intent by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language." (internal quotation marks and citation omitted)), *rev'd on other grounds and remanded*, 2021-NMSC-030, 499 P.3d 622. The plain language does not limit the arrests based on the location of the alleged crime. The only limitation is that the law enforcement officer have probable cause that one of the listed crimes occurred.

{18} Reading the entire statute as a whole, we understand the statute is about two central subjects: warrantless arrests and protection from civil and criminal liability relating to those warrantless arrests. While the definition of licensed premises— restaurants and bars—is relevant to the civil and criminal liability portion of the statute, it does not limit the provision regarding warrantless arrest requirements. We must presume the Legislature chose to omit a requirement that the warrantless arrest occur on licensed premises. *See State v. Jade G.*, 2007-NMSC-010, ¶ 16, 141 N.M. 284, 154 P.3d 659 ("We are not permitted to read into a statute language which is not there, particularly if it makes sense as written." (internal quotation marks and

11

citation omitted)). We also note, as discussed above, the liability protection is not limited by the reference to licensed premises, but also extends to operators of premises open to the public. Section 30-3-6(B). Defendant's contention that the statute only applies when the arrest occurs on licensed premises ignores the term "operator" in the statute. Such an interpretation would render a portion of the statute superfluous, which we decline to do. *See Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous[.]" (internal quotation marks and citation omitted)).

{19} We next look at the history of Section 30-3-6. It was originally enacted in 1981 and amended once in 1983. The 1983 amendment changed the title from "Reasonable detention *on licensed premises*; assault, battery or public affray" to "Reasonable detention; assault, battery, public affray or criminal damage to property[,]" which is still current today. *Compare* § 30-3-6 (1981) (emphasis added), *with* § 30-3-6. This deletion provides further support to our view that the Legislature intended that the warrantless arrest need not be based on actions that occurred at particular locations and supports our conclusion that Section 30-3-6 requires only that the arresting officer have probable cause for one of the crimes listed in the statute to execute a warrantless arrest.

{20} The 1983 amendment also added "criminal damage to property" to the list of offenses and added "operator" to the class of people protected from criminal or civil liability arising from such arrests.[2] *Compare* § 30-3-6, *with* § 30-3-6 (1981). These two additions significantly expanded the scope of the statute by increasing both the number and types of situations in which law enforcement is permitted to make warrantless arrests and to extend civil and criminal liability protections to more people. And by defining "operator" as "owner or the manager of any establishment or premises open to the public[,]" *compare* § 30-3-6(A)(3), *with* § 30-3-6(A) (1981), the statute broadened "licensed premises" beyond licensed liquor establishments to include the entirety of premises open to the public. The amendments made to the statute support our conclusion that the statute's scope is not limited to events that occur in a barroom or restaurant, but its scope is broad enough to include the events that occurred in this case, in a parking lot adjacent to a school.

{21} We conclude that Section 30-3-6 provides statutory authority for law enforcement to arrest someone without a warrant if they have probable cause that that person committed a battery pursuant to Section 30-3-4. "An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge are

---

[2]The 1983 amendment to Section 30-3-6 also added the requirement that eligible parties must communicate "truthfully and in good faith to the law enforcement officer" to qualify for liability protection. *Compare* § 30-3-6(B), *with* § 30-3-6(B) (1981).

sufficient to warrant the officer to believe that an offense has been or is being committed." *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 9, 143 N.M. 455, 176 P.3d 1187. Defendant was charged with committing petty misdemeanor battery, which is "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." Section 30-3-4.

{22} Deputy Deprez was called to the scene where people were actively keeping Defendant and Hebert apart. Both were visibly injured such that Deputy Deprez asked if they needed medical intervention. He interviewed multiple witnesses who stated Defendant initiated the physical altercation. Defendant was the only person who claimed Hebert hit her first. Defendant also admitted to drinking alcohol and gave differing accounts of how Hebert started the fight. These facts together sufficiently established probable cause that Defendant committed a battery against Hebert.

{23} Having concluded that Section 30-3-6 provided Deputy Deprez with statutory authority to arrest Defendant without a warrant, we next determine whether the warrantless arrest was legal under the New Mexico Constitution.

## II. Defendant's Warrantless Arrest Was Valid Under the New Mexico Constitution

{24} The State argues that the district court erred in its determination that no exigent circumstances existed to excuse Deputy Deprez's failure to obtain a warrant.

As explained above, all warrantless arrests must comply with the "reasonableness" component of Article II, Section 10 of the New Mexico Constitution. *Campos*, 1994-NMSC-012, ¶ 5. "Warrantless arrests made under the authority of [a] statute may be presumed reasonable but that presumption may be rebutted under our interpretation of what is constitutional." *Id.* ¶ 7. "[A] warrantless arrest supported by probable cause is reasonable if some exigency existed that precluded the officer from securing a warrant." *Paananen*, 2015-NMSC-031, ¶ 27 (internal quotation marks and citation omitted). Exigent circumstances exist in "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Campos*, 1994-NMSC-012, ¶ 11 (internal quotation marks and citation omitted). However, this is not an exhaustive list, and there "are other situations in which an exigency not necessarily amounting to an imminent threat of danger, escape, or lost evidence will be sufficient to render reasonable a warrantless public arrest supported by probable cause under the totality of the circumstances." *Paananen*, 2015-NMSC-031, ¶ 26. "An on-the-scene arrest supported by probable cause will usually supply the requisite exigency." *Id.*

{25}   In *Paananen*, our Supreme Court determined that a warrantless arrest for shoplifting met New Mexico's constitutional standard when the responding officer developed probable cause to arrest the defendant at the scene based on the review of

15

evidence. *Id.* ¶¶ 24-28. The officers did not have the "information or time to act on it prior to arriving on scene, and thus could not have gotten an arrest warrant before responding to the call." *Id.* ¶ 24. Similarly, in this case, Deputy Deprez was dispatched based on a call that Defendant was attacking Hebert. He arrived at the scene, interviewed witnesses, and determined based on his investigation that he had probable cause to arrest Defendant for battery. Deputy Deprez did not have information to act on before he arrived at the scene and investigated, and he did not have time to secure a warrant before responding. He developed probable cause to arrest based on his review of the evidence at the scene.

{26}     Further, just as in *Paananen*, given it was not reasonable to obtain an arrest warrant before responding, Deputy Deprez faced three alternatives: to arrest Defendant on the scene; detain Defendant while going to the court to obtain a warrant, which would lead to a de facto warrantless arrest based on the time necessary to procure the warrant; or release Defendant and secure a warrant. *See id.* ¶ 25. Our Supreme Court concluded in *Paananen* that a warrantless arrest was "the only reasonable approach" in this situation. *Id.* It determined that to secure a warrant would lead to an expenditure of resources "seemingly disproportionate to the crime of shoplifting and a risk our Legislature has declared unacceptable" and cited to the statute that authorized warrantless arrests for shoplifting. *Id.* In this case, securing a warrant would have led to a similar disproportionate expenditure of resources for a

16

crime that the Legislature has also declared unacceptable. *See* § 30-3-6; *Paananen*, 2015-NMSC-031, ¶ 25. In our view, Deputy Deprez chose a reasonable approach under the circumstances.

{27} Having concluded Defendant's warrantless arrest was reasonable, we need not address the State's final argument that dismissal was an inappropriate remedy under the circumstances.

**CONCLUSION**

{28} For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**JACQUELINE R. MEDINA, Judge**