The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **October 30, 2023**

**No. A-1-CA-39970**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**SERGIO VARELA-CORONADO,**

      Defendant-Appellee.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Michelle Renee Torres, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Attorney General
Albuquerque, NM

for Appellant

Crowley & Gribble, P.C.
Joseph J. Gribble
Albuquerque, NM

for Appellee

**OPINION**

**IVES, Judge.**

{1}     The State appeals the metropolitan court's order granting Defendant Sergio Varela-Coronado's motion to suppress evidence obtained by law enforcement at a sobriety roadblock. The State argues on appeal, as it did in the metropolitan court, that under the Fourth Amendment to the United States Constitution, it was not required to establish the constitutionality of the roadblock itself pursuant to *City of Las Cruces v. Betancourt*, 1987-NMCA-039, 105 N.M. 655, 735 P.2d 1161, because there was reasonable suspicion to believe that Defendant was driving while intoxicated before Defendant's vehicle came to a stop at the roadblock. The metropolitan court found that Defendant entered the roadblock before law enforcement made the observations that the State relied upon to establish individualized reasonable suspicion to justify the seizure of Defendant. The court therefore concluded that the State bore the burden of establishing the constitutionality of the roadblock under *Betancourt*. Because the State did not present any evidence regarding the constitutionality of the roadblock, the metropolitan court suppressed the evidence obtained at the roadblock. We affirm because we conclude that, under the facts of this case, Defendant was seized for purposes of the Fourth Amendment when he entered the roadblock—before law

enforcement made the observations that arguably amounted to reasonable suspicion.[1]

**Factual and Procedural Background**

{2} Because we are reviewing an order suppressing evidence, we recite the facts in the manner most favorable to Defendant and indulge all reasonable inferences in support of the order. *State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971. In the early morning hours of March 20, 2021, police officers with the Albuquerque Police Department DWI Unit were operating a sobriety roadblock on Unser Boulevard. Approaching traffic was alerted to the existence of the roadblock by signs advising "reduced speed ahead" and "sobriety checkpoint." From this point on, drivers were unable to exit the roadblock. Beyond these signs, traffic cones directed drivers into two lanes that eventually led to stop signs at which individuals were contacted by attending officers.

{3} At around one in the morning, Officer Zachary Herbst observed a vehicle that was going "very fast" "[strike] . . . at least one" of the traffic cones set up to demarcate the roadblock, before eventually coming to a stop at the stop sign. Officer Herbst then observed that the driver—Defendant—had bloodshot, watery eyes and smelled of alcohol. Defendant was arrested and charged with driving under the

---

[1]Defendant does not argue that the search and seizure provision of the New Mexico Constitution, *see* N.M. Const. art. II, § 10, affords him greater protection in this context, and we therefore limit our analysis to the Fourth Amendment.

influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102(C)(1) (2016), and possession of an open container of alcohol in a motor vehicle, contrary to NMSA 1978, Section 66-8-138 (2013).

{4} Defendant moved to suppress, challenging the constitutionality of the roadblock under the Fourth Amendment. Defendant argued that sobriety roadblocks are presumptively unconstitutional seizures and it was therefore incumbent on the State to demonstrate that the roadblock was reasonable under the guidelines set forth in *Betancourt*. The State countered that an analysis of the roadblock under *Betancourt* was unnecessary because "Officer Herbst's observations of Defendant's driving behavior constituted an independent reasonable suspicion of criminal activity." The State's view was that "[a]lthough a DWI checkpoint is a seizure that must pass constitutional muster, if an officer develops reasonable suspicion prior to the stop, the analysis as laid out in *Betancourt* is inapplicable." In short, the State argued that the Defendant was not "seized" until the "initial stop" by Officer Herbst, at which point individualized reasonable suspicion had already developed. Defense counsel maintained that Defendant had been seized earlier—when he entered the roadblock—because at that moment his "liberties [had] been restricted." Counsel further asserted that "it is not the stopping of the vehicle," but rather entering the "perimeter" of the roadblock that constitutes a seizure.

{5}     At the hearing on this motion, the State did not call any witness who could testify about whether the roadblock itself was constitutional under *Betancourt*. Instead, the State continued to rely on its theory that *Betancourt* did not apply because there was individualized reasonable suspicion to stop Defendant. Accordingly, the State presented only the testimony of the arresting officer, Officer Herbst.

{6}     The metropolitan court rejected the State's theory and granted the motion to suppress, apparently agreeing with Defendant's argument that he was seized upon entering the roadblock. The court found that when Officer Herbst observed Defendant hit at least one of the cones, Defendant was within the area of the sobriety roadblock. Based on this finding and an additional finding that Officer Herbst would not have contacted Defendant if not for the existence of the roadblock, the court concluded "that *Betancourt* does apply and therefore the State must prove the constitutionality of the seizure by establishing that the factors in *Betancourt* were satisfied." In the absence of testimony regarding the *Betancourt* factors, the court granted Defendant's motion. The State appeals.

**DISCUSSION**

{7}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We "review[] factual matters with deference

4

to the [metropolitan] court's findings if substantial evidence exists to support them, and [we] review[] the [metropolitan] court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. We draw all reasonable inferences in support of the metropolitan court's decision, and we disregard all inferences and evidence to the contrary. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. When there are limited facts, "our practice has been to employ presumptions and as a general rule, we will indulge in all reasonable presumptions in support of the [metropolitan] court's ruling." *Id.* ¶ 11 (text only) (citation omitted).

{8}     The State's appeal presents this question: If a driver enters a roadblock before law enforcement makes the observations relied upon for individualized reasonable suspicion, does the Fourth Amendment require the state to establish that the roadblock itself was reasonable under *Betancourt*? We conclude that the answer is yes. As we will explain, our conclusion is based on the role played by *Betancourt* in determining when roadblock seizures are reasonable and on the Fourth Amendment principles used to determine the point in time when a person is seized.

{9}     Once a person has been seized, the Fourth Amendment requires that the seizure be reasonable under the facts of the case. *See, e.g.*, *State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599. Generally, the reasonableness of a seizure is demonstrated by an individualized showing of reasonable suspicion or probable cause, depending on the intrusiveness of the search. *See, e.g.*, *Jason L.*,

2000-NMSC-018, ¶ 14 ("An arrest must be supported by probable cause and an investigatory stop must be supported by reasonable suspicion."). At issue in *Betancourt* was the constitutionality of seizures that occur at sobriety roadblocks—seizures that occur when law enforcement has not established reasonable suspicion with respect to each individual driver. 1987-NMCA-039, ¶ 1.

{10}   This Court explained that "a [sobriety] roadblock is not per se violative of the [F]ourth [A]mendment" simply because individuals are seized without reasonable suspicion or probable cause. *Id.* ¶ 9. Rather, consistent with the "essence" of the search and seizure guarantees, "the question of whether a particular roadblock violates the [F]ourth [A]mendment is basically one of reasonableness." *Id.* This Court reasoned that a roadblock is reasonable if it strikes the right balance between "the gravity of the governmental interest or public concern served by the roadblock, the degree to which it advances these concerns and the severity of the interference with individual liberty, security, and privacy resulting from the roadblock." *Id.* ¶ 10. Given the State's weighty interest in deterring, detecting, and removing drunk drivers from our roadways, this Court held that roadblocks could pass constitutional muster if they are reasonably administered. *Id.* ¶¶ 10-13. However—recognizing the importance of the right "to the possession and control of [one's] own person"—this Court stated that "the reasonableness of any roadblock [would] be very closely scrutinized." *Id.* ¶ 10.

{11} To ensure that roadblocks are reasonable, this Court outlined eight nonexclusive guidelines courts must use to determine whether sobriety roadblocks comply with the Fourth Amendment. *See id.* ¶¶ 14-21. A roadblock that is deemed reasonable under *Betancourt* "provides a constitutionally adequate substitute for the reasonable suspicion that would otherwise be required." *State v. Bolton*, 1990-NMCA-107, ¶ 8, 111 N.M. 28, 801 P.2d 98; *see also State v. Bates*, 1995-NMCA-080, ¶ 9, 120 N.M. 457, 902 P.2d 1060. In other words, the state must establish that the roadblock itself was reasonable under *Betancourt* unless the state can prove that it had individualized reasonable suspicion "at the inception of the seizure." *Jason L.*, 2000-NMSC-018, ¶ 20; *see also State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30 ("The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop.").

{12} So the key issue in Defendant's case is whether the State proved that it had individualized reasonable suspicion *at the inception* of the seizure. If so, then the metropolitan court erred by requiring the State to prove that the roadblock itself was reasonable under *Betancourt*. If not, then the metropolitan court correctly suppressed the evidence because the State failed to prove that the roadblock was reasonable.

{13} To determine when Defendant was seized, we rely on an established Fourth Amendment test. A person is seized if (1) "a reasonable person would have believed

7

that [they were] not free to leave," taking into account "all of the circumstances surrounding the incident," *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), including any authority shown by the officers, *Jason L.*, 2000-NMSC-018, ¶ 19, and (2) the person submitted to the show of authority.[2] *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure "requires either physical force . . . or, where that is absent, submission to the assertion of authority" (emphasis omitted)).[3]

{14}     These principles are consistent with New Mexico precedents regarding seizures made at or in the general vicinity of roadblocks, and those precedents illustrate that the timing of the seizure determines whether the state may justify the seizure without establishing that the roadblock itself is reasonable. The first of these precedents is *Betancourt*, which was a consolidated appeal in which this Court considered a single roadblock and the separate seizures of two defendants. 1987-

---

[2]In *Jason L.*, this Court held that the first step of the Fourth Amendment seizure analysis involves a mixed question of law and fact. *See* 2000-NMSC-018, ¶ 19. Whether an officer used a show of authority is a "factual inquiry, . . . review[ed] for substantial evidence" and whether a reasonable person would have felt free to leave is a legal inquiry, reviewed de novo. *Id.* Because the State has not made a substantial evidence challenge to the facts surrounding the incident, we are presented with a legal question that we review de novo.

[3]While Defendant did not make a separate argument under the New Mexico Constitution, we note that the moment when a person is "seized" under the federal constitution may be different than the moment when the person is seized under the state constitution. *See State v. Garcia*, 2009-NMSC-046, ¶ 35, 147 N.M. 134, 217 P.3d 1032 (rejecting, as a matter of state constitutional law, the submission to authority analysis set forth in *Hodari D.* "and instead maintain[ing] *Mendenhall*'s free-to-leave test as the proper measure of a seizure under Article II, Section 10" of the New Mexico Constitution).

NMCA-039, ¶¶ 1-6. One of the defendants—defendant Baca—approached the roadblock in the early morning hours and stopped as instructed by the attending officers. *Id.* ¶ 4. The officers saw two open beer cans in the car and observed that defendant Baca's eyes were bloodshot and smelled alcohol on the defendant's breath. *Id.* Defendant Baca was eventually arrested for driving while intoxicated. *Id.* Turning to the second defendant—defendant Betancourt—officers at the roadblock observed a car at a stoplight east of the roadblock without its headlights on. *Id.* ¶ 5. As the vehicle approached, it "proceeded through the roadblock at a high rate of speed," almost hitting the attending officers. *Id.* Eventually, the car was stopped, and defendant Betancourt was arrested for driving while intoxicated. *Id.* Both defendants unsuccessfully moved to suppress evidence based on the Fourth Amendment. *Id.* ¶¶ 1, 7.

{15} This Court tersely affirmed the denial in defendant Betancourt's appeal, observing that the constitutionality of the stop did not depend on the constitutionality of the roadblock. *Id.* ¶¶ 7-8. As we understand it, defendant Betancourt was not seized until *after* defendant Betancourt drove through the roadblock, *id.* ¶ 5, because that was when she submitted to the officers' show of authority, and at that point officers "possessed sufficient articulable facts upon which to stop her and probable cause to believe that she was driving while intoxicated." *Id.* ¶ 8. Analysis of the roadblock, therefore, was not required to determine whether her Fourth Amendment

9

rights had been violated. *Id.* ¶¶ 7-8. In contrast, defendant Baca submitted to the officers' show of authority and was seized at the roadblock itself without any individualized reasonable suspicion or probable cause. *Id.* ¶ 7. Therefore, whether there had been a violation of the Fourth Amendment "depend[ed] entirely upon the constitutionality of the initial stop at the roadblock." *Id.* Under these circumstances, the state was required to satisfy the eight nonexclusive guidelines outlined in *Betancourt*, *see id.* ¶ 23; that is, it was required to provide a "substitute" for reasonable suspicion, *Bolton*, 1990-NMCA-107, ¶ 8. Because the state did so, this Court affirmed the denial of defendant Baca's motion to suppress. *Betancourt*, 1987-NMCA-039, ¶ 23.

{16}   In a subsequent case, *State v. Anaya*, 2009-NMSC-043, 147 N.M. 100, 217 P.3d 586, our Supreme Court addressed a seizure that occurred before the defendant reached a sobriety roadblock. When the defendant was within sight of the roadblock, the defendant made a legal u-turn. *Id.* ¶ 13. The Court held that there was individualized reasonable suspicion based on the u-turn, which, under the facts of the case, suggested that the defendant wished to evade the roadblock. *Id.* ¶¶ 11-19. We understand this to mean that the defendant had not yet submitted to the officers' show of authority when making the u-turn; the defendant was seized only after eventually being stopped by the officers. The Court ultimately held that because the officers possessed individualized reasonable suspicion to arrest before the defendant

10

was seized, the state was not required to prove that the roadblock was constitutional under *Betancourt*. *Id.* ¶ 19.

{17}    Under established Fourth Amendment principles and the holdings of *Betancourt* and *Anaya*, we believe that the outcome of the State's appeal hinges on when the seizure of Defendant began. If Defendant was seized before Officer Herbst observed the driving that the State relied on to argue individualized reasonable suspicion, then the State could only justify the seizure by relying on a substitute for individualized reasonable suspicion—i.e., a roadblock that was reasonable under *Betancourt*. On the other hand, if Defendant was seized after Officer Herbst's observations, then those observations could be relied on in an attempt to establish individualized reasonable suspicion, regardless of whether the roadblock itself was reasonable under *Betancourt*.

{18}    Viewing the evidence presented at the suppression hearing in the light most favorable to the metropolitan court's ruling and drawing all reasonable inferences in support of that ruling, *see Jason L.*, 2000-NMSC-018, ¶ 10, we hold that Defendant was seized when he entered the roadblock. Our holding is based on our conclusions that (1) given the circumstances, including the show of law enforcement authority, a reasonable person would not have felt free to leave the roadblock, *see Mendenhall*, 446 U.S. at 554; *Jason L.*, 2000-NMSC-018, ¶ 19; and (2) Defendant submitted to

11

that show of authority. *See Hodari D.*, 499 U.S. at 626. We explain our conclusion as to each prong of the test in turn.

{19}     As to the first prong, because of the show of law enforcement authority at the roadblock, we do not believe that a reasonable person who had entered the roadblock—as Defendant had—would have felt free to leave it. To determine whether a person has been seized through a show of authority, we use an objective test. *See Hodari D.*, 499 U.S. at 628. We do not ask "whether the [person] perceived that [they were] being ordered to restrict [their] movement," but instead "whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* Whether a person would feel free to leave depends on "the factual circumstances of each case," viewed in light of these factors: "the conduct of the police," "the person of the individual citizen," and "the physical surroundings of the encounter." *State v. Lopez*, 1989-NMCA-030, ¶ 10, 109 N.M. 169, 783 P.2d 479. Importantly, this Court has held that "[b]locking a subject's vehicle is a form of physical restraint" and "[o]rdinarily, a driver . . . in a car whose progress is blocked by police would not believe themselves free to leave." *Id.* ¶ 13. Here, by the time Defendant's vehicle entered the roadblock and before he hit the traffic cone, his vehicle's forward movement was blocked by uniformed police officers, and by signs and traffic cones put in place by law enforcement to indicate to drivers that they must remain in line, proceed toward the roadblock, and come to a stop. We conclude that under these

circumstances a reasonable person in Defendant's position would feel that their movement was restricted and that they were not free to leave. *See Hodari D.*, 499 U.S. at 628.

{20} Turning to the second prong, we believe that Defendant submitted to the show of authority by entering the roadblock and not trying to evade it. Whether an individual has submitted to a show of authority is context-dependent, and "the whole picture" must be taken into account. *See United States v. Mosley*, 743 F.3d 1317, 1325 (10th Cir. 2014) (internal quotation marks and citation omitted). Importantly here, "what may amount to submission depends on what a person was doing before the show of authority: a fleeing [person] is not seized until [they are] physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin v. California*, 551 U.S. 249, 262 (2007). And when an individual submits to authorities in "the form of passive acquiescence," a seizure occurs if, in light "of all of the circumstances surrounding the incident, a reasonable person would have believed [they were] not free to leave." *Id.* at 255 (internal quotation marks and citation omitted). In other words, when a person passively acquiesces, the first and second prongs of the test collapse into one. We believe that Defendant passively acquiesced because the metropolitan court found that Defendant entered the roadblock and did not find that Defendant attempted to evade the roadblock. Because Defendant passively acquiesced, our conclusion as to the

first prong of the test is dispositive as to the second. We believe that Defendant submitted to the officer's show of authority by entering the roadblock.

{21} For these reasons, we hold that by the time Defendant entered the roadblock, he was seized. Because the State did not prove that it had individualized reasonable suspicion at the inception of the seizure, we hold that the Fourth Amendment required the State to prove that the roadblock was reasonable under *Betancourt*. The State did not do so, and we therefore affirm the metropolitan court's decision to suppress the evidence.

**CONCLUSION**

{22} We affirm.

{23} **IT IS SO ORDERED.**


_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**


_____
**KRISTINA BOGARDUS, Judge**


_____
**JANE B. YOHALEM, Judge**

14